[Crim. No. 17006. In Bank. May 23, 1974.]

In re DONALD L. KAPPERMAN on Habeas Corpus.

## COUNSEL

Donald L. Kapperman, in pro. per., and J. Anthony Kline, under appointment by the Supreme Court, for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Russell Iungerich and Kent L. Richland, Deputy Attorneys General, for Respondent.

## OPINION

**BURKE, J.**—In this case we review the constitutionality of Penal Code section 2900.5[1] which gives credit to persons convicted of felony offenses for time served in custody prior to the commencement of their prison sentence. Subdivision (c) of section 2900.5 makes the credit prospective only, limiting the application of the section to those persons who are delivered into the custody of the Director of Corrections on or after March

---

[1]Section 2900.5 provides: "(a) In all felony convictions, either by plea or by verdict, when the defendant has been in custody in any city, county, or city and county jail, all days of custody of the defendant from the date of arrest to the date on which the serving of the sentence imposed commences, including days served as a condition of probation in compliance with a court order, shall be credited upon his sentence, or credited to any fine which may be imposed, at the rate of not less than twenty dollars ($20) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the sentence to be imposed, the entire sentence shall be deemed to have been served. In any case where the court has imposed both a prison sentence and a fine, any days to be credited to the defendant shall first be applied to the sentence imposed, and thereafter such remaining days, if any, shall be applied to the fine.

"(b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted.

"(c) This section shall be applicable only to those persons who are delivered into the custody of the Director of Corrections on or after the effective date of this section [i.e. March 4, 1972]."

4, 1972, the effective date of the section. We have concluded that this limitation violates article I, sections 11 and 21, of the California Constitution and the equal protection clause of the Fourteenth Amendment in that it constitutes a legislative classification which is not reasonably related to a legitimate public purpose. We do not invalidate the entire statute, however, but only eliminate the discriminatory classification under subdivision (c) and thus extend the statutory benefits retroactively to those whom the Legislature improperly excluded.

In an information filed on October 22, 1970, petitioner was charged with murder (Pen. Code, § 187), kidnaping for ransom and reward (Pen. Code, § 209), and six counts of robbery (Pen. Code, § 211). In June 1971 he pleaded guilty to two counts of armed robbery and the other counts were dismissed. Petitioner was sentenced on each count to "the term prescribed by law," with the terms to run concurrently.[2] Petitioner did not appeal and does not now attack the validity of the judgment of conviction; instead he petitions for habeas corpus seeking credit on his term for the 304 days he allegedly remained in custody between the time of his arrest and his receipt by the Department of Corrections.[3]

Petitioner, having been delivered to the custody of the Director of Corrections before March 4, 1972, would not be entitled to credit under the provisions of Penal Code section 2900.5, for subdivision (c) of that section provides that its application is to be prospective only. However, petitioner invokes the basic guarantees of equal protection embodied in the Fourteenth Amendment to the United States Constitution and article I, sections 11 and 21, of the California Constitution, which prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction, and require that classifications between those to whom the state accords and withholds substantial benefits must be reasonably related to a legitimate public purpose. (*Hayes* v. *Superior Court,* 6 Cal.3d 216, 223 [98 Cal.Rptr. 449, 490 P.2d 1137]; *In re Gary W.,* 5 Cal.3d 296, 303 [96 Cal.Rptr. 1, 486 P.2d 1201]; *In re King,* 3 Cal.3d 226, 232

[2]The term prescribed for armed robbery is from five years to life. (Pen. Code, § 211.) The counts to which petitioner pleaded guilty also recited that petitioner was "armed . . . within the meaning of Penal Code sec. 12022.5." That section imposes an additional five-year minimum term of imprisonment for persons who "use" a firearm during an offense, and petitioner's sentence was later "clarified" to include a finding that petitioner was armed *and used* a firearm during the offenses. Although petitioner has in prior proceedings contended that he did not knowingly plead guilty to use of a firearm under section 12022.5, that question is not now before us.

[3]Under Penal Code section 2900 the term of imprisonment fixed by the judgment in a criminal action commences to run only upon the actual delivery of the defendant into the custody of the Director of Corrections at the place designated by the Director of Corrections as a place for the reception of persons convicted of felonies.

[90 Cal.Rptr. 15, 474 P.2d 983].) Petitioner urges us to hold that the prospective limitation of subdivision (c) does not meet the foregoing test and that section 2900.5 credit must be applied uniformly to all those imprisoned for felony convictions irrespective of the date of delivery to the Director of Corrections.[4]

Petitioner is clearly a member of a class to whom the Legislature has denied a benefit granted to others. Although petitioner is serving terms with a maximum of life, denial of credit affects the date petitioner would first become eligible for parole. Therefore, we must determine whether the classification imposed by subdivision (c) is supported by a rational and legitimate state interest.

■ Initially, we point out that this case is not governed by cases (e.g., *In re Estrada,* 63 Cal.2d 740, 744 [48 Cal.Rptr. 172, 408 P.2d 948]) involving the application to previously convicted offenders of statutes lessening the *punishment* for a particular offense. The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written. (Cf. *People* v. *Harmon*, 54 Cal.2d 9, 26 [4 Cal.Rptr. 161, 351 P.2d 329]; overruled in *In re Estrada, supra,* on other grounds.) The People herein do not contend that retroactive application of section 2900.5 would interfere with the foregoing legitimate public purpose.

The People urge that an unconditional presentence jail credit for all present inmates will interfere with the effective operation of the Indeterminate Sentence Law. The People note that the primary purpose of the ISL is to allow the Adult Authority to mitigate punishment and provide rehabilitation on an individual basis. To achieve this purpose, the Adult Authority must undertake a case-by-case analysis of each prisoner, requiring ample opportunity to observe and evaluate that prisoner. (See *In re Minnis,* 7 Cal.3d 639, 644 [102 Cal.Rptr. 749, 498 P.2d 997].) Since the Adult Authority cannot observe the prisoner during his presentence custody in jail, a credit for such custody may, according to the People, undermine the ability of the Adult Authority to make a reasoned judgment regarding rehabilitation.

---

[4] According to exhibits filed by the People, the Adult Authority is presently applying presentence credits to reduce both the statutory maximum and minimum sentences defined in the commitment, and to reduce the minimum eligible parole release date. If petitioner's contentions are accepted, presentence credits would be applied in the same manner to those persons convicted of a felony and delivered into the custody of the Director of Corrections before March 4, 1972.

The People's argument discloses, however, a misunderstanding of the manner in which presentence credit is to be applied under section 2900.5. ■ As we interpret that section, the credit operates only to reduce the statutory maximum and minimum commitment terms, but ordinarily would not interfere with the Adult Authority's discretion in setting the actual parole release date. The credit will advance the parole *eligibility* date, but would require premature release only in those cases in which the presentence credit combined with the actual prison terms fixed by the Adult Authority exceed the statutory maximum term applicable to the offense.[5] And even though, in rare cases, the discretionary role of the Adult Authority may be curtailed, this result follows from the policy decision already made by the Legislature when it enacted section 2900.5, namely, that for purposes of credit, precommitment detention should be equated with postcommitment imprisonment. Although the state may have a legitimate interest in preserving the discretionary functions of the Adult Authority by differentiating between such detention and imprisonment, the state has waived that interest with respect to inmates received into state prison after March 4, 1972. Accordingly, the People must point to some legitimate public purpose served by excluding from the benefits of section 2900.5 all prisoners received before that time.[6]

We do not find persuasive the People's speculation that the Legislature may have made section 2900.5 prospective under the premise that only recently had rehabilitative facilities at county jails advanced sufficiently to justify granting a credit on prison sentences. As we explained above, such a credit normally would not interfere with the Adult Authority's discretionary function in determining rehabilitation. Moreover, nothing in the

[5]Neither would a retroactive credit necessarily affect the parole termination date of prisoners currently on parole in this state. The parole term is fixed by the Adult Authority to reflect the period of parole supervision deemed appropriate for the parolee to demonstrate his readiness for complete discharge of Department of Corrections custody; that period does not inevitably extend throughout the entire maximum term specified for the particular offense. Rather, as we have said, the goals of the parole system can best be achieved by the liberation of a prisoner on parole at the earliest period permitted by law and when on a consideration of the merits of each individual case, parole ought to be granted in the judgment of the board. (*In re Minnis, supra,* 7 Cal.3d 639, 644.) A retroactive credit would result in an advanced parole termination only in those cases wherein the credited time, plus the prison and parole time already served or to be served, would exceed the maximum term. (See *In re Grey, post,* p. 554 [114 Cal.Rptr. 104, 522 P.2d 664].

[6]See *People* ex rel. *Carroll* v. *Frye,* 35 Ill.2d 604 [221 N.E.2d 262, 264], in which the Supreme Court of Illinois held that a statute granting prospective pretrial custody credit was invalid as creating an arbitrary discrimination based upon the fortuitous circumstance of conviction date. The court held that no rational purpose would be served by treating persons sentenced prior to the effective date of the credit statute differently than those sentenced after that date.

language of section 2900.5 supports such a theory, and the People have furnished us with no empirical data disclosing any such improvement in jail facilities.

Contrary to the People's assertion in this respect, our holding is consistent with the rationale of the recent decision of the United States Supreme Court in *McGinnis* v. *Royster,* 410 U.S. 263 [35 L.Ed.2d 282, 93 S.Ct. 1055]. That case concerned a provision of New York law which granted a "good-time" credit toward parole eligibility for prisoners who exhibited good behavior during their prison confinement. (Cf. Pen. Code, § 4019.) The provision was challenged as violating equal protection principles by denying similar "good-time" credit for the period of presentence jail incarceration. The court rejected this contention, holding that the provision and its different treatment of jail and prison commitment could be justified as having a rational basis founded in the significant differences between county jails and state prisons with regard to rehabilitation facilities and programs. The People herein rely upon *McGinnis'* recognition of this distinction as compelling the conclusion that denial of presentence credit does not violate the constitutional guarantee of equal protection. Yet the instant case presents a different situation from that in *McGinnis.* Section 2900.5 does not purport to award credit on the basis of whether a prisoner was incarcerated in a county jail as distinguished from a state prison; rather, credit is granted or withheld solely on the basis of the date on which a person was delivered into the custody of the Director of Corrections. Thus, possible differences between county and state rehabilitation programs are in no way related to the classification made by the Legislature and cannot serve to justify that classification.

Even if *McGinnis* had concerned a question of retroactivity it still would not be controlling inasmuch as it dealt with a different kind of credit. *McGinnis* involved a potential 10 days a month "good-time" credit awarded as a bonus for good conduct and efficient performance of duty while in prison. It did not involve credit for time actually spent in jail, which credit was already specifically provided for by New York law.[7]

The People also contend that the prospective application of the presentence jail credit is justified by the state's legitimate purpose in avoiding unnecessary burdens upon the administration of justice. The People assume

---

[7]Nor are *Bennett* v. *Procunier,* 262 Cal.App.2d 799 [69 Cal.Rptr. 116], and *People* v. *Rose,* 41 Cal.App.2d 445 [106 P.2d 930], controlling. Although those cases involve refusals to grant credit for nonprison time (in a diagnostic facility and jail respectively) neither case considered the equal protection argument raised by petitioner herein.

that either the Adult Authority or the courts would experience great difficulty in applying the credit to all persons without regard to the date of their prison commitment. Yet the burdens predicted by the People appear illusory.[8]

First of all, many of the difficulties posited by the People will not arise since we hold that section 2900.5 must be applied to all felony convictions, and not only to those in which presentence detention occurred as a result of indigency and inability to post bail.[9] Specifically, under our holding, it will be unnecessary to determine whether the person seeking credit was in fact indigent or whether he was otherwise entitled to bail. Furthermore, it does not appear that ascertaining the amount of credit due will constitute an unreasonable burden. Questionnaire forms with regard to "indigency credit" (see fn. 9, *ante*), have already been prepared by the Department of Corrections and are currently being distributed to inmates and parolees. With slight modification, these forms could be adopted for use in complying with this decision. When completed these forms could be forwarded to the

---

[8]In this respect our case differs from *People* v. *Aranda,* 63 Cal.2d 518 [47 Cal. Rptr. 353, 407 P.2d 265], involving the prospective effect of an amendment to section 17 of the Penal Code. That section formerly provided in part: "Where a court commits a defendant to the California Youth Authority upon conviction of a crime punishable by imprisonment in the state prison or fine or imprisonment in a county jail, in the discretion of the court, the crime shall be deemed a felony until and unless the court, after the person . . . has been discharged . . . makes an order determining that the crime of which he was convicted was a misdemeanor." It was amended to read: "Where a court commits a defendant to the Youth Authority upon conviction of a crime punishable, in the discretion of the court, by imprisonment in the state prison or fine or imprisonment in a county jail, the crime shall be deemed a misdemeanor." The court in *Aranda* correctly rejected the contention that failure to apply the amendment retroactively would violate equal protection principles. Such a retroactive application necessarily would have resulted in upsetting countless discretionary determinations to impose a felony, rather than misdemeanor, conviction. Moreover, a retroactive application of section 17 might have required unnecessary retrials of cases in which courts had admitted prior "felony" convictions in reliance upon the prior law. Retroactive application of section 2900.5 would not involve such problems.

[9]See *In re Young,* 32 Cal.App.3d 68 [107 Cal.Rptr. 915], which involved an indigent detained in county jail before trial because of inability to raise bail. The court held that denial of presentence credit to indigents constituted an invidious discrimination in violation of the Fourteenth Amendment of the United States Constitution or article I, section 11, of the California Constitution. (See *Tate* v. *Short,* 401 U.S. 395 [28 L.Ed.2d 130, 91 S.Ct. 668]; *In re Antazo,* 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999].)

Because we have concluded that section 2900.5, subdivision (c), is not reasonably related to a legitimate public purpose, we need not examine the reasoning of *In re Young, supra,* 32 Cal.App.3d 68, nor consider the People's assertion that petitioner is not entitled to credit under *Young* because he was originally charged with a capital offense which was nonbailable. Likewise, we need not reach the People's argument that the state's interest in maintaining the bail system justified denial of presentence credit to petitioner.

appropriate county sheriff's office for factual confirmation of presentence jail time. Thereafter, only a simple ministerial adjustment would be required by the Adult Authority so that its records reflect the presentence time served.[10]

A final argument offered by the People to justify the limitation of subdivision (c) is that many negotiated pleas may have been agreed upon taking into consideration the period of presentence incarceration. This argument is not persuasive even assuming it may have been a factor in some negotiated pleas. For the most part the presentence jail time would be insubstantial in relation to the statutory punishment.

■ Having thus concluded that the prospective limitation in section 2900.5, subdivision (c), is invalid, we must consider the validity of the remainder of that section. ■ It is the general rule that although a provision or part of an act may be unconstitutional and beyond the power of the Legislature to enact, the entire act may not be void. " '[U]nconstitutional provisions will not vitiate the whole act, unless they enter so entirely into the scope and design of the law, that it would be impossible to maintain it without such obnoxious provisions.' " (*In re King, supra,* 3 Cal.3d 226, 237; *Danskin* v. *San Diego Unified Sch. Dist.,* 28 Cal.2d 536, 555 [171 P.2d 885].) ■ And we have held that a reviewing court properly may correct a discriminatory classification by invalidating only the invidious exception or exemption and thus extend statutory benefits to those whom the Legislature improperly excluded. (*Hayes* v. *Superior Court, supra,* 6 Cal.3d 216, 224.) ■ In this case we are convinced that it is consistent with probable legislative intent to strike only the impermissible prospective limitation rather than invalidate the entire presentence credit procedure provided in section 2900.5.

Thus, we conclude that the credit under section 2900.5 should be extended to those incarcerated or on parole for felony offenses regardless of the date of their commitment to state prison. We hereby direct the Adult Authority to take appropriate steps to inform petitioner and all other persons under its custody and supervision of the availability of that credit, to ascertain the amount of credit due and to adjust its records accordingly.

Wright, C. J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

---

[10]Only in the exceptional case where there is some irreconcilable discrepancy between the facts claimed by an inmate or parolee and those found by the sheriff would it be necessary to burden the courts with resolution of the issue.

**CLARK, J.**—I dissent. Petitioner is not denied equal protection of the law merely because the statutory right to presentence credit is restricted to those delivered to prison *after* the effective date of the legislation. A *constitutional* rule of criminal procedure is not applied retroactively by the United States Supreme Court unless it goes to jurisdiction in the traditional sense or is so fundamental to the guilt-determining process that its observance probably would have resulted in acquittal. (*Michigan* v. *Payne* (1973) 412 U.S. 47, 61-62 [36 L.Ed.2d 736, 748-749, 93 S.Ct. 1966]; Marshall, J., dissenting.)[1] Therefore, it is anomalous for this court to hold that a strictly *statutory* right must be given retroactive effect unless purely prospective application is supported by some "rational and legitimate state interest."

The majority seeks to distinguish *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], on the ground that retroactive application there would have been more disruptive to the administration of justice. (*Ante,* p. 549.) To the contrary, the *Aranda* court apparently did not even find such a consideration constitutionally relevant, because it held without qualification: "A refusal to apply a statute retroactively does not violate the Fourteenth Amendment." (63 Cal.2d at p. 532.) The same principle has been expressed by federal courts: "There is nothing unconstitutional in a legislature's conferring a benefit on prisoners only prospectively." (*Comerford* v. *Commonwealth of Massachusetts* (1st Cir. 1956) 233 F.2d 294, 295, quoted with approval in *Jones* v. *Cupp* (9th Cir. 1971) 452 F.2d 1091, 1093.)[2] The vast majority of courts considering the issue

---

[1]The test voiced both by the United States Supreme Court and this court for determining whether a constitutional ruling should be applied retroactively calls for the consideration of three criteria: (1) the purpose of the new rule, (2) the extent of reliance upon the old rule, and (3) the effect retroactive application would have on the administration of justice. (See *Halliday* v. *United States* (1969) 394 U.S. 831, 832 [23 L.Ed.2d 16, 19-20, 89 S.Ct. 1498]; *Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]; *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 308 [110 Cal.Rptr. 329, 515 P.2d 273]; *In re Tahl* (1969) 1 Cal.3d 122, 134 [81 Cal.Rptr. 577, 460 P.2d 449].) Justice Marshall contends that "principled adjudication requires the Court to abandon the charade" of determining questions of retroactivity through consideration of the aforementioned three criteria and to admit that a constitutional ruling is not applied retroactively except in the two circumstances stated in the accompanying text. (*Michigan* v. *Payne, supra.*)

[2]*Comerford* involved a prospective Massachusetts statute increasing the amount of good conduct credit a prisoner could earn per month, while *Jones* concerned prospective Oregon legislation reducing the penalties for first and second degree murder.

have denied retroactive effect to statutes conferring credit for time in custody prior to commencement of sentence.[3]

But even assuming arguendo that limiting section 2900.5 to prospective application requires a "rational and legitimate state interest," the majority supplies one. In seeking to distinguish cases involving "the application to previously convicted offenders of statutes lessening the *punishment* for a particular offense," the majority concedes that "[t]he Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." (*Ante,* p. 546.) Petitioner will become eligible for parole consideration almost a year early if he is given the presentence credit he claims. (*Ante,* pp. 545-546.) Eligibility for parole consideration is as integral to punishment by imprisonment as length of sentence. For a life prisoner like petitioner, the date he becomes eligible for parole is of paramount importance. (*Wilson* v. *State of North Carolina* (4th Cir. 1971) 438 F.2d 284, 286.) Therefore, subdivision (c) of section 2900.5 should be upheld to maintain the deterrent effect of punishment imposed on persons delivered to prison prior to the effective date of the statute.[4]

Finally, if proposed reforms must be weighed by the Legislature in light of this court's insistence that the consequences of change shall extend to the past as well as the future, "progressive" legislation will likely be stifled. As a matter of fact, section 2900.5 was not limited to prospective application when it was originally introduced in the 1971 Regular Session as As-

---

[3]See *Duke* v. *Blackwell* (5th Cir. 1970) 429 F.2d 531, 532; *Valcarcel* v. *United States* (2d Cir. 1969) 409 F.2d 211, 213; *Sobell* v. *Attorney General of U.S., Dept. of Justice* (3d Cir. 1968) 400 F.2d 986, 990; *United States* v. *Pruitt* (7th Cir. 1968) 397 F.2d 502, 504; *Shank* v. *State* (Ind. App. 1972) 289 N.E.2d 315, 320-321; *State* v. *Williams* (1972) 262 La. 769, 774 [264 So.2d 638]; *Bowen* v. *Recorder's Court* (1970) 384 Mich. 55, 58-59 [179 N.W.2d 377]; *State* v. *Montoya* (1968) 79 N.M. 353 [443 P.2d 743]; *State* v. *Virgil* (1970) 276 N.C. 217, 226 [172 S.E.2d 28]; cf. *Mott* v. *Dail* (E.D.N.C. 1972) 337 F.Supp. 731; *People* ex rel. *Carroll* v. *Frye* (1966) 35 Ill.2d 604, 609-610 [221 N.E.2d 262]; cf. *Commonwealth* v. *Snyder* (1967) 427 Pa. 83, 103-104 [233 A.2d 530] (language in the statute referring to "any person who has been convicted" construed to indicate legislative intent that statute be given retroactive effect).

[4]The fact that "[t]he People herein do not contend that retroactive application of section 2900.5 would interfere with the foregoing legitimate public purpose" (*ante,* p. 546) does not excuse such interference. Although the Attorney General in fact argued vigorously and persuasively that a number of rational and legitimate state interests support purely prospective application of section 2900.5, his failure to do so would have been excusable in light of petitioner's express disavowal, both in his briefs and at oral argument, that he was relying on section 2900.5 in claiming a constitutional right to presentence credit.

sembly Bill No. 1237.[5] One well may wonder, therefore, whether the Legislature would have created the right to presentence credit if it had realized it was facing an all-or-nothing choice.

McComb, J., concurred.

---

[5] As originally introduced, the bill contained the following language: "This section shall be applicable to all persons in custody on the effective date of this act."