[No. B236054. Second Dist., Div. One. Oct. 31, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK VERBA, Defendant and Appellant.

992

**COUNSEL**

Robert Bryzman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Kim Aarons, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ROTHSCHILD, Acting P. J.—** Defendants who committed their crimes on or after October 1, 2011, are eligible for presentence conduct credits calculated on the basis of two days of conduct credit for every two days of actual custody. (Pen. Code, § 4019, subds. (b), (c) & (f).)[1] Defendants whocommitted their crimes prior to October 1, 2011, are eligible for conduct credits at the previous rate of two days for every four days in custody. (§ 4019, subd. (h).) Appellant, who committed his crime in April 2010, contends that affording him a lower level of conduct credits solely because he committed his crime prior to October 1, 2011, violates his constitutional right to the equal protection of the laws. We conclude that the right to equal protection does not prevent the Legislature from limiting the increased level of presentence conduct credits to detainees who committed their crimes on or after the October 1, 2011 operative date of the statute. We therefore uphold appellant's sentence.

## FACTS AND PROCEEDINGS BELOW

In August 2011, the trial court sentenced Mark Verba for the crime of failing to register as a sex offender in April 2010. A defendant is entitled to accrue presentence custody credits under section 2900.5 and conduct credits under section 4019, subdivisions (b) and (c), for the period of incarceration prior to sentencing. In sentencing Verba, the trial court awarded him two days of conduct credit for every four days he spent in presentence custody under section 4019, subdivisions (b) and (c), as amended by Senate Bill No. 76 (2009–2010 Reg. Sess.) which became effective in September 2010. (Stats. 2010, ch. 426, §§ 2, 5.) Under this formula, Verba received 182 days of presentence custody credit consisting of 122 actual days in custody and 60 days of conduct credit.[2]

While Verba was in presentence custody, the Legislature amended section 4019, subdivisions (b) and (c), to provide that "a term of four days will be

---

[1] All statutory references are to the Penal Code.

[2] The previous limit on conduct credits to persons required to register as sex offenders of two days for every six days of custody (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50) was eliminated in 2010. (Stats. 2010, ch. 426, § 2.)

deemed to have been served for every two days spent in actual custody." (§ 4019, subd. (f).) The statute containing this amendment became effective on June 30, 2011 (Stats. 2011, ch. 39, §§ 53, 73), but the amendment was expressly made operative only as to "prisoners who are confined . . . for a crime committed on or after October 1, 2011." (§ 4019, subd. (h), added by Stats. 2011, ch. 39, § 53; referred to hereafter as the "October 1 amendment.") Because Verba committed his crime in April 2010, he was not entitled to the new level of conduct credit.

Verba contends that making the new level of conduct credit operative on a date after the effective date of the statute violates his right to the equal protection of the laws as guaranteed by the Fourteenth Amendment of the federal Constitution and article I, section 7 of the California Constitution. To remedy this constitutional infirmity, he argues, the new level of conduct credit should apply to all defendants who were inmates on the statute's effective date June 30, 2011.

## DISCUSSION

I. *Verba's Challenge to the October 1 Amendment Is Not Barred by Section 1237.1*

We disagree with the Attorney General's contention that section 1237.1 bars Verba's challenge to the constitutionality of the October 1 amendment. Section 1237.1 states in relevant part: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing . . . ."

Section 1237.1 does not apply here. Verba does not contend that the court erred in calculating his custody credits under the version of section 4019 in effect at the time.

II. *The October 1 Operative Date of the Statute Does Not Violate Verba's Right to the Equal Protection of the Laws*

Under the October 1 amendment, if A commits a crime on September 30, 2011, and B commits a crime on October 2, 2011, A will receive a lower level of conduct credits than B, even if their time in custody begins on the same day, e.g., October 3, 2011, because A committed his crime before October 1, 2011, and B committed his crime "on or after October 1, 2011." (§ 4019, subd. (h), as amended by Stats. 2011, ch. 39, § 53.)

We are asked to decide whether this sentencing scheme creates a classification that affects two similarly situated groups in an unequal manner

(*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654]), and, if so, whether the classification "is supported by a rational and legitimate state interest" (*In re Kapperman* (1974) 11 Cal.3d 542, 546 [114 Cal.Rptr. 97, 522 P.2d 657]).

### A. Inmates Who Committed Their Crimes Before and After October 1, 2011, Are Similarly Situated for Purposes of the Statute That Increased the Level of Conduct Credit

Verba contends that he is a member of the class of defendants in presentence custody who committed their crimes prior to October 1, 2011, to whom the Legislature denied a benefit, four days of credit for every two days of actual time served, which it granted to defendants in presentence custody who committed crimes on or after October 1, 2011.

Respondent argues that inmates who served time before and after the October 1 operative date of the amendment are not similarly situated with respect to the purpose of increasing conduct credit in order to provide inmates with incentives to engage in productive work and maintain good conduct while they are in custody. (*People v. Brown* (2012) 54 Cal.4th 314, 328–329 [142 Cal.Rptr.3d 824, 278 P.3d 1182].) These incentives for good behavior, respondent argues, "are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response." (*Ibid.*) (See *In re Strick* (1983) 148 Cal.App.3d 906, 913 [196 Cal.Rptr. 293] [" 'it is impossible to influence behavior after it has occurred' "].)

This argument fails and *Brown* and *Strick* are not on point because in this instance the legislative purpose for increasing the level of conduct credits was not to provide inmates with incentives for better behavior in custody. Indeed, the Legislature made no change in the behavior required to earn conduct credit. Rather, the increased conduct credits were enacted "as part of a larger measure intended to save the state money by releasing eligible prisoners early to reduce jail and prison populations and by emphasizing programs designed to prevent recidivism." (*People v. Lara* (2012) 54 Cal.4th 896, 902 [144 Cal.Rptr.3d 169, 281 P.3d 72]; see *People v. Garcia* (2012) 209 Cal.App.4th 530, 534–541 [147 Cal.Rptr.3d 221] [summarizing the back-and-forth changes in the levels of conduct credits between 2009 and 2011].)

We agree with Verba that with respect to the awarding of conduct credits under section 4019 he is similarly situated with persons whose offenses were committed on or after October 1, 2011. Defendants who committed offenses and earned conduct credit before the operative date of the statute are treated more harshly than those who committed the same crimes and earned conduct

credit on or after October 1, 2011. The two groups are similarly situated in the sense that they committed the same offenses but are treated differently in terms of earning conduct credit based solely on the dates their crimes were committed. For purposes of receiving conduct credit, nothing distinguishes the status of a prisoner whose crime was committed after October 1, 2011, from one whose crime was committed before that date.

### B. *A Statute's Operational Date Requires a Rational Basis*

■ Verba's equal protection claim requires us to distinguish between a statute's effective date, " 'the date upon which the statute came into being as an existing law' " and its operative date, " 'the date upon which the directives of the statute may be actually implemented.' " (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 223 [105 Cal.Rptr.2d 407, 19 P.3d 1148].)

As respondent points out, courts have long held that " '[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' " (*People v. Floyd* (2003) 31 Cal.4th 179, 191 [1 Cal.Rptr.3d 885, 72 P.3d 820], quoting Justice Holmes in *Sperry & Hutchinson. Co. v. Rhodes* (1911) 220 U.S. 502, 505 [55 L.Ed. 561, 31 S.Ct. 490]; accord, *People v. Lynch* (2012) 209 Cal.App.4th 353, 359 [146 Cal.Rptr.3d 811].) In other words, the practical necessity that a statutory change have a beginning provides a rational basis for classifications that fall on either side of the statute's effective date.

This rationale does not apply to the operative date of a statute, however. Unlike a statute's effective date, which is determined according to immutable rules written into the state Constitution (Cal. Const., art. IV, § 8), its operative date, the date upon which the directives of the statute are actually implemented, is set by the Legislature in its discretion. (*Preston v. State Bd. of Equalization, supra*, 25 Cal.4th at p. 223.) The exercise of that discretion is subject to rational basis review. (*Carson Redevelopment Agency v. Wolf* (1979) 99 Cal.App.3d 239, 243, 245 [160 Cal.Rptr. 213]; but see dictum in *People v. Lynch, supra*, 209 Cal.App.4th at p. 359 [distinction between effective and operative dates of Prop. 36 "was irrelevant to the Supreme Court's analysis" in *People v. Floyd*].)

### C. *Rational Bases Exist for the October 1 Operative Date*

We can envision several legitimate reasons for making the increased level of presentence conduct credit applicable only to those who commit their crimes on or after October 1, 2011.

As noted above, the Legislature's decision to increase the amount of presentence conduct credits a defendant could earn was "intended to save the state money." (*People v. Lara, supra,* 54 Cal.4th at p. 902.) The Legislature may have decided that the nature and scope of the fiscal emergency required granting an increase in the level of conduct credits but only at a time after the effective date of the amendments. A slightly delayed operative date, the Legislature may have believed, struck a proper, rational balance between the state's fiscal concerns and its public safety interests.

A related justification for the prospective application of increased conduct credits lies in the Legislature's right to control the risk of new legislation by limiting its application. "Requiring the Legislature to apply retroactively any change in the law benefitting criminal defendants imposes unnecessary additional burdens on the already difficult task of fashioning a criminal justice system that protects the public and rehabilitates criminals." (*People v. Lynch, supra,* 209 Cal.App.4th at p. 361.)

In addition, the Legislature could have rationally believed that by tying the increased level of conduct credits to crimes committed on or after a future date, it was preserving the deterrent effect of the criminal law as to those crimes committed before that date. (*People v. Floyd, supra,* 31 Cal.4th at p. 190; *In re Kapperman, supra,* 11 Cal.3d at p. 546.) To reward an inmate with enhanced conduct credits, even for time spent in presentence custody after the effective date of the statute, arguably weakens the deterrent effect of the law as it stood when the inmate committed the crime. We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards in effect at the time they committed their offense. Such a punishment scheme also avoids "sentencing delays and other manipulations." (*People v. Floyd, supra,* 31 Cal.4th at p. 191.)

We acknowledge that most all statutory dates and time periods are "somewhat arbitrary" in the sense that other dates and time periods might have been chosen. (*People v. Willis* (1978) 84 Cal.App.3d 952, 956 [149 Cal.Rptr. 301].) In California, with some exceptions, statutes enacted by the Legislature in one year take effect on January 1 of the following year. (Cal. Const., art. IV, § 8, subd. (c)(2).) There is no compelling reason for making January 1 the effective date. Statutes could, for example, just as well take effect 40 days after their passage or on the following July 4 or 90 days after the Legislature adjourns. (See Singer & Singer, 2 Sutherland Statutes and Statutory Construction (2009 new ed.) § 33:2, pp. 2–6.)

## DISPOSITION

The judgment is affirmed.

Chaney, J., and Johnson, J., concurred.

A petition for a rehearing was denied November 27, 2012, and appellant's petition for review by the Supreme Court was denied February 13, 2013, S207193.