Filed 11/13/13  P. v. Ellis CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY GLEN ELLIS,<br><br>    Defendant and Appellant. | H038801<br>(Monterey County<br> Super. Ct. No. SS111413A) |

This case comes before this court for a second time.  In this appeal, appellant challenges the denial of his post judgment motion for additional presentence conduct credits.  Respondent contends that the law of the case doctrine precludes this court from considering appellant's challenge.  For reasons that follow, we affirm.

Given the issue on appeal it is not necessary to detail the factual background underlying appellant's conviction.

*Procedural Background[1]*

After his *Romero* motion[2] was denied, pursuant to a negotiated disposition, Anthony Ellis (appellant) pleaded no contest to one count of infliction of corporal injury on a spouse or cohabitant (Pen. Code, § 273.5); appellant admitted that he had a prior

---

[1]     We have taken judicial notice of our unpublished opinion in H037958.

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

strike conviction within the meaning of Penal Code section 1170.12, subdivision (a)(1). In exchange for his no contest plea, appellant was promised that he would receive a maximum sentence of six years in state prison and the dismissal of two remaining charges—assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)),[3] and false imprisonment by violence (§§ 236, 237).

On February 14, 2012, the court sentenced appellant to three years in state prison doubled due to the prior felony conviction. The court awarded appellant 203 actual days of custody credit and 100 days of conduct credits for a total of 303 days. Appellant filed a timely notice of appeal based on the sentence or other matters occurring after the plea.

Appellant's appointed counsel filed an opening brief in which no issues were raised and asked this court for an independent review of the record as required by *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Counsel declared that appellant was notified that no issues were being raised by counsel on appeal and that an independent review under *Wende* was being requested.

On August 10, 2012, we notified appellant of his right to submit written argument on his own behalf within 30 days. That time passed and we did not receive a response from appellant.

However, appellant's counsel suggested the following points to aid our review. 1) The trial court abused its discretion in denying appellant's *Romero* motion. 2) On equal protection grounds, the trial court erroneously denied appellant conduct credits under an amendment to section 4019 that became effective October 1, 2011, for the time appellant spent in custody between October 1, 2011 and the time he was sentenced on February 14, 2012.

Pursuant to *Wende*, *supra*, 25 Cal.3d 436, we reviewed the entire record and, with the exception of the amount of a restitution fine that was reflected in the abstract of

---

[3]     All unspecified statutory references are to the Penal Code.

judgment, we concluded there were no arguable issues on appeal, including the issues that appellant's counsel had suggested to guide our review.

As to counsel's suggestion that the court erred in denying appellant the enhanced conduct credits of the October 1, 2011 amendment to section 4019, we noted that appellant committed his crime before that amendment took effect.[4] (*People v. Brown* (2012) 54 Cal.4th 314, 322, fn. 11 (*Brown*) [the changes to presentence credits expressly apply prospectively to prisoners who are confined to a county jail or other facility for a crime committed on or after October 1, 2011].)

We went on to state that for equal protection purposes, even if we agreed that the time that appellant spent in county jail between October 1, 2011 and the time he was sentenced in February 2012, appellant was similarly situated to other defendants who committed their crimes after October 1, and were in presentence custody, because the statutory distinction at issue neither " 'touch[ed] upon fundamental interests' nor [was] based on gender, there was no equal protection violation 'if the challenged classification [bore] a rational relationship to a legitimate state purpose. [Citations.]' (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200 (*Hofsheier* ); see also *People v. Ward* (2008) 167 Cal.App.4th 252, 258 [rational basis review applicable to equal protection challenges based on sentencing disparities].)"

We perceived such a plausible reason as to the period of time appellant was in custody after October 1, 2011.

We stated "[a]s our Supreme Court has acknowledged 'statutes lessening the *punishment* for a particular offense' may be made prospective only without offending equal protection principles. (*In re Kapperman* (1974) 11 Cal.3d 542, 546 (*Kapperman*.) In *Kapperman,* the court wrote that the Legislature may rationally adopt such an

---

[4]     Appellant committed his crime on July 27, 2011.

3

approach, 'to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' (*Ibid.*)"[5]

We explained, "[i]n *People v. Floyd* (2003) 31 Cal.4th 179 (*Floyd*), the defendant sought to invalidate a provision of Proposition 36 barring retroactive application of its provisions for diversion of nonviolent drug offenders. (*Id.* at pp. 183-184.) The court reiterated that the Legislature may preserve the penalties for existing offenses while ameliorating punishment for future offenders in order to ' "assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." ' (*Id.* at p. 190.) The statute before the court came within this rationale because it 'lessen[ed] punishment for particular offenses.' (*Ibid.*) As the *Floyd* court noted, ' "[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." [Citation.]' (*Id.* at p. 191.)"

We observed " '[t]he very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment.' (*People v. Lara* (2012) 54 Cal.4th 896, 906.) As our Supreme Court accepted in *Brown*, *supra*, 54 Cal.4th 314, 'to increase credits reduces punishment.' (*Id*. at p. 325, fn 15.)"

We gathered that "the rule acknowledged in *Kapperman* and *Floyd* is that a statute ameliorating punishment for particular offenses may be made prospective only without offending equal protection, because the Legislature will be supposed to have acted in order to optimize the deterrent effect of criminal penalties by deflecting any assumption by offenders that future acts of lenity will necessarily benefit them."

We noted that appellant committed his crime in July 2011. At that time, his ability to earn conduct credit was limited to two days for every four days of actual time served in

---

[5] In *Kapperman*, the court found that rationale inapplicable to the issue before the court. (*Kapperman, supra,* 11 Cal.3d at p. 546.)

presence custody.  (Stats. 2010, ch. 426, § 2, September 2010 amendment to § 4019.)[6]

We found that although the statute at issue did not ameliorate punishment for a particular offense, it did, in effect, ameliorate punishment for all offenses committed after a particular date.  By parity of reasoning to the rule acknowledged by both the *Kapperman* and *Floyd* courts, we concluded that the Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed before that date.  Accordingly, we stated that to reward appellant with the enhanced credits of the October 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakened the deterrent effect of the law as it stood when appellant committed his crimes.  We saw nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed.

In this appeal, appellant acknowledges that in the *Wende* appeal we considered appellate counsel's suggestion that the denial of day for day credits violated appellant's constitutional rights to equal protection.  Nevertheless, appellant argues that the law of the case doctrine is inapplicable because he was prohibited from claiming additional presence credits in his prior appeal and therefore the claim was not litigated.

---

[6]     Two other amendments to section 4019 were made in 2011.  (Stats. 2011, ch. 15 § 482, eff. April 4, 2011, operative Oct. 1, 2011; Stats. 2011, ch. 39, § 53, eff. June 30, 2011, operative Oct. 1, 2011.)  However, neither of these amendments assisted appellant because they were not operative until October 1, 2011.  At that time they were amended by the current version of section 4019.  "An enactment is a law on its effective date only in the sense that it cannot be changed except by legislative process; the rights of individuals under its provisions are not substantially affected until the provision operates as law."  (*People v. Henderson* (1980) 107 Cal.App.3d 475, 488.)

5

*Discussion*

*Law of the Case*

Under the law of the case doctrine, all principles and rules of law necessary to an appellate court's decision are binding in a subsequent appeal in the same case. (*People v. Barragan* (2004) 32 Cal.4th 236, 246.) "Thus, the law-of-the-case doctrine 'prevents the parties from seeking appellate reconsideration of an already decided issue in the same case absent some significant change in circumstances.' [Citation.] The doctrine is one of procedure, not jurisdiction . . . ." (*People v. Boyer* (2006) 38 Cal.4th 412, 441.) As such, it "prevents parties from seeking reconsideration of an issue already decided . . . ." (*People v. Yokely* (2010) 183 Cal.App.4th 1264, 1273.)

In *Kowis v. Howard* (1992) 3 Cal.4th 888 (*Kowis*), the California Supreme Court considered, when, if ever, summary denial of a pretrial petition for extraordinary relief established the law of the case precluding reconsideration of the issue on appeal following final judgment. (*Id.* at p. 891.) The Court of Appeal had denied the pretrial petition with the following order: " 'The petition for writ of mandate and request for stay and the opposition have been read and considered by Presiding Justice Kremer and Justices Wiener and Huffman. The petition is denied. (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892.)' " (*Id.* at p. 892.) The *Kowis* court held that "[a] summary denial of a writ petition does not establish law of the case whether or not that denial is intended on the merits or is based on some other reason." (*Id.* at p. 899.)

The *Kowis* court explained that "[i]f a writ petition is given full review by issuance of an alternative writ, the opportunity for oral argument, and a written opinion, the parties have received all of the rights and consideration accorded a normal appeal. Granting the resulting opinion law of the case status as if it had been an appellate decision is [then] appropriate. But if the denial followed a less rigorous procedure, it should not establish law of the case." (*Kowis, supra,* 3 Cal.4th at p. 899.)

6

Our Supreme Court affirmed its ruling in *Kowis* in *Lewis v. Superior Court* (1999) 19 Cal.4th 1232 (*Lewis*). The Supreme Court noted that "[o]ne of the policy reasons supporting [its] holding was that a contrary rule would prevent the losing party from having an opportunity for oral argument on the issues raised in the [writ] petition." (*Lewis, supra,* at p. 1259.)

On the other hand a defendant who seeks and is denied relief after issuance of an alternative writ would be foreclosed from raising the issue again. This is so because "[w]hen the appellate court issues an alternative writ, the matter is fully briefed, there is an opportunity for oral argument, and the cause is decided by a written opinion. The resultant holding establishes law of the case upon a later appeal from the final judgment." (*Kowis, supra,* 3 Cal.4th at p. 894.)

We recognize that in the overwhelming number of cases where appointed counsel finds no arguable issue and files a *Wende* brief, the Courts of Appeal in this state, after independently reviewing the record, also fail to discover any arguable issue. Generally, no brief is submitted by the client; the respondent's brief, if any, is a pro forma document; and no oral argument is presented.

However, " '[w]hen a California appellate court receives a *Wende* brief, it assigns the case to a staff attorney who prepares a memorandum analyzing all possible legal issues in the case. Typically, the staff attorney then makes an oral presentation to the appellate panel and explains whether the case presents any arguable issues for appeal. [Citation.] Thus, as Professor J. Clark Kelso remarked in a report prepared for California's Appellate Courts Committee, Commission on the Future of the Courts, "the *Wende* process duplicates in all relevant aspects the exact process that appellate counsel must follow in evaluating the merits of the case." [Citation.]' [Citation.]" (*People v. Kelly* (2006) 40 Cal.4th 106, 123, fn. 6 (*Kelly*).)

Although in the *Wende* appeal, appellant did not file any brief raising the issue of presentence custody credits, appellate counsel presented the issue of the award of

presentence custody credits to aid our review and the resulting opinion discussed in some detail why we rejected appellate counsel's position that there was error in the award of those credits.

"Although the written decision in a *Wende* appeal typically will not be certified for publication in the Official Reports and thus will not establish precedent for future cases, it [serves] the other significant purposes identified in the constitutional debates— (1) providing guidance to the parties and the judiciary in subsequent litigation arising out of the same 'cause,' and (2) promoting a careful examination of each case and a result supported by law and reason.  Having devoted its resources to reviewing the entire appellate record, the Court of Appeal is well positioned to forestall the unnecessary expenditure of *additional* judicial resources by gathering and setting forth in its opinion the bare information necessary for other courts to recognize *which contentions asserted by the defendant have been considered and found lacking in arguable merit* and which were considered unreviewable due to an inadequate record." (*Kelly*, *supra*, 40 Cal.4th at p. 120, second italics added.)[7]  The second section of the italicized language implies that where we have considered an issue it becomes law of the case.

The fact that counsel filed the original opening brief under *Wende* confirms that he did not believe the issues he listed were arguable.  If he *did* think they were arguable, he could not rely on the *Wende* procedure and would instead have been obliged to file a brief that included written argument on those issues.  (Cal. Rules of Court, rule 8.204, subd. (a)(1)(B).)  Indeed, if his listing of these issues made his brief something other than a *Wende* brief, his failure to provide supporting legal argument would have entitled us to disregard those issues.  (*Associated Builders & Contractors, Inc. v. San Francisco*

---

[7]     As the *Kelly* court explained, "when a Court of Appeal affirms a judgment in a *Wende* appeal in which the defendant has filed supplemental contentions, the appellate court necessarily must have considered and rejected those contentions." (*Kelly*, *supra*, 40 Cal.4th at p. 120.)

8

*Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2; *People v. Barnett* (1998) 17 Cal.4th 1044, 1107, fn. 37.)

Nevertheless, appellant argues that he could not have raised the issue of presentence custody credits in the former appeal because under section 1237.1, a defendant may not appeal a judgment of the superior court on the sole ground of denial of appropriate presentence credits unless he has first moved the superior court for those credits.

"Penal Code section 1237.1 does not preclude a defendant from raising, as the sole issue on an appeal, a claim his or her presentence custody credits were calculated pursuant to the wrong version of the applicable statute." (*People v. Delgado* (2012) 210 Cal.App.4th 761, 763.) We note that appellant did not have the benefit of the *Delgado* decision when the *Wende* brief was filed.

However, a trial court's failure to award the correct amount of presentence custody credit due to miscalculation or legal error is a jurisdictional defect that renders the sentence an unauthorized sentence. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.) It is settled that an unauthorized sentence is "subject to judicial correction *whenever* the error [comes] to the attention of the trial court or a reviewing court. [Citations.]" (*People v. Serrato* (1973) 9 Cal.3d 753, 763, italics added, disapproved on other grounds in *People v. Fosselman* (1983) 33 Cal.3d 572.)

Nonetheless, in order to forestall a claim that counsel was ineffective in failing to raise this issue earlier we will again address the merits of appellant's contention.

*Applicable Law*

A criminal defendant is entitled to accrue both actual presentence custody credits under section 2900.5 and conduct credits under section 4019 for a period of incarceration prior to sentencing. Conduct credits may be earned under 4019 by performing additional labor (§ 4019, subd. (b)) and by an inmate's good behavior. (§ 4019, subd. (c).) In both instances, the section 4019 credits are collectively referred to as conduct credits. (*People*

9

*v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) The court is charged with awarding such credits at sentencing. (§ 2900.5, subd. (a).)

Before January 25, 2010, conduct credits under section 4019 could be accrued at the rate of two days for every four days of actual time served in pre-sentence custody. (Stats.1982, ch. 1234, § 7, p. 4554 [former § 4019, subd. (f)].) Effective January 25, 2010, the Legislature amended section 4019 in an extraordinary session to address the state's ongoing fiscal crisis. Among other things, Senate Bill No. 3X 18 amended section 4019 such that defendants could accrue custody credits at the rate of two days for every two days actually served, twice the rate as before except for those defendants required to register as a sex offender, those committed for a serious felony (as defined in § 1192.7), or those who had a prior conviction for a violent or serious felony. (Stats.2009–2010, 3d Ex.Sess., ch. 28, §§ 50, 62 [former § 4019, subds. (b), (c), & (f)].)

Effective September 28, 2010, section 4019 was amended again to restore the presentence conduct credit calculation that had been in effect prior to the January 2010 amendments, eliminating one-for-one credits. (Stats. 2010, ch. 426, § 2.) By its express terms, the newly created section 4019, subdivision (g), declared these September 28, 2010 amendments applicable only to inmates confined for a crime committed on or after that date, expressing the Legislature's intention that they have prospective application only. (Stats. 2010, ch. 426, § 2.)

The current version of section 4019 (hereafter October 1 amendment) was in effect and operative beginning October 1, 2011, and at the time of sentencing in this case on February 14, 2012. (Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35, pp. 5976-5977, eff. Sept. 21, 2011, operative Oct. 1, 2011.)[8] That section states in pertinent part "if all days

_____

[8] Initially, the 2011 changes to the accrual of conduct credit were made applicable to prisoners confined for crimes committed on or after July 1, 2011. (Stats. 2011, ch. 15, § 482, pp. 497-498, eff. Apr. 4, 2011, operative Oct. 1, 2011 [former § 4019, subd. (h)].) Further amendments to section 4019 that were enacted before that legislation became operative made those changes applicable to prisoners confined for crimes committed on

are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody."  (§ 4019, subd. (f); see § 4019, subds. (b)-(e).) This award of custody credits is sometimes referred to as one-for-one credits. Nevertheless, subdivision (h) of section 4019 provides:  "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011.  Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

The trial court calculated appellant's conduct credits under the September 28, 2010 revision of the presentence custody credit law; that version was in effect when appellant committed his crime.  Under that version, a defendant with a current or prior serious or violent felony conviction was entitled to two days of conduct credit for every four days of presentence custody.  (Former §§ 2933, 4019 (Stats.2010, ch. 426, § 2).)[9]

*Equal Protection Challenge to the Current Version of Section 4019*

Shortly before we filed our opinion in H037958, two appellate courts concluded that prisoners confined in a county jail after October 1, 2011, for crimes committed before October 1, 2011, are similarly situated to prisoners who committed their crimes after October 1, 2011, and are confined in a county jail, but determined there was a

---

or after October 1, 2011.  (See Stats. 2011, ch. 15, § 636, p. 622, eff. Apr. 4, 2011; Stats. 2011, ch. 39, §§ 53, 68, pp. 1730-1731, 1742, eff. June 30, 2011, operative Oct. 1, 2011; Stats.2011, ch. 40, § 3, p. 1748, eff. June 30, 2011; Stats. 2011-2012, 1st Ex. Sess., ch. 12, § 35, eff. Sept. 21, 2011, operative Oct. 1, 2011.)

[9]  For a brief period, effective September 28, 2010, section 2933 was amended to include a subdivision (e), which provided that an eligible defendant sentenced to prison could receive one day of conduct credit for every day he was in presentence custody. (Stats. 2010, ch. 426, § 1, p.2087.)  However, a defendant who had a prior serious felony conviction, such as appellant, was not subject to this provision (former § 2933, subd. (e)(3); Stats.2010, ch. 426, § 1), but was instead awarded conduct credit consisting of two days credit for every four days of presentence custody (former § 4019; Stats.2011, ch. 39, § 53).  Section 2933 has since been amended to delete subdivision (e).  (Stats.2011–2012, 1st Ex.Sess.2011, ch. 12, § 16, p. 5963.)

11

rational basis for the classifications. (*People v. Verba* (2012) 210 Cal.App.4th 991, 995–997 (*Verba*)[10]; *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53-55, (*Rajanayagam*) (review denied Feb. 13, 2013) [the two groups are serving time together in local presentence custody thus the two groups are similarly situated].)

Even assuming the two groups of defendants who are in custody together—those who committed their crimes before October 1, 2011, and those who committed their crimes after October 1, 2011—are similarly situated for purposes of the October 1, 2011, amendment to section 4019, we conclude again, as we have done in the past (*People v. Kennedy* (2012) 209 Cal.App.4th 385 398-400 (*Kennedy*)), that the classifications bear a rational relationship to a legitimate state purpose. Similar to the courts in *Verba*, *supra*, 210 Cal.App.4th 991, 995–997 and *Rajanayagam, supra,* 211 Cal.App.4th at pages 54–55, we conclude that there are several legitimate reasons for making the enhanced presentence conduct credits applicable only to those who commit their crimes on or after October 1, 2011, including cost savings measured against public safety (*Verba, supra,* 210 Cal.App.4th at pp. 996–997; *Rajanayagam, supra,* 211 Cal.App.4th at p. 55), maintaining the desired deterrent effect of penal laws by carrying out the punishment in effect at the time defendants commit their offenses (*Kennedy, supra,* 209 Cal.App.4th at p. 398, *Verba, supra,* 210 Cal.App.4th at p. 997), and the Legislature's right to control the risk of new legislation by limiting its application (*Verba, supra,* 210 Cal.App.4th at p. 997).

Accordingly, we reject appellant's equal protection challenge to the current version of section 4019.

---

[10] In *Verba*, the defendant was sentenced before the operative date of the 2011 amendment to section 4019. (*Verba*, *supra*, at p. 993.) Accordingly, he was not in custody after October 1, 2011.

*Statutory Language*

Appellant argues that the most credible interpretation of the current version of section 4019 is that it applies equally to the presentence custody of defendants who committed their crimes before October 1, 2011.

Section 4019, subdivision (h) states in pertinent part, "The changes to this section enacted by the act that added this subdivision shall apply *prospectively* and shall apply to prisoners who are confined to a county jail, city jail, . . . *for a crime committed on or after October 1, 2011.* [The first sentence.] Any days earned by a prisoner prior to October 1, 2011 shall be calculated at the rate required by the prior law. [The second sentence.]" (Italics added.)

Appellant argues that the first sentence, if construed literally, renders the second sentence superfluous.

"[I]n reviewing the text of a statute, [courts] must follow the fundamental rule of statutory construction that requires every part of a statute be presumed to have some effect and not be treated as meaningless unless absolutely necessary. 'Significance should be given, if possible, to every word of an act. [Citation.] Conversely, a construction that renders a word surplusage should be avoided. [Citations.]' [Citations.]" (*People v. Arias* (2008) 45 Cal.4th 169, 180.) In addition, "[w]hen a statute is capable of more than one construction, ' "[w]e must . . . give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." ' [Citations.]" (*In re Reeves* (2005) 35 Cal.4th 765, 771, fn. 9.) Finally, "under the traditional 'rule of lenity,' language in a penal statute that truly is susceptible of more than one reasonable construction in meaning or application ordinarily is construed in the manner that is more favorable to the defendant. [Citation]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1277.)

13

"When construing a statute, our primary task is to ascertain the Legislature's intent. [Citation.] We begin our task by determining whether the language of the statute is ambiguous. [Citation.] A statutory provision is ambiguous if it is susceptible of two reasonable interpretations. [Citation.] ' "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." [Citation.]' [Citation.]" (*People v. Dieck*, *supra*, 46 Cal.4th at pp. 939-940.)

In *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*) (review denied Oct. 31, 2012), with respect to subdivision (h) of section 4019, the Fifth District Court of Appeal concluded: "[T]he Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.] The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits. So read, the sentence is not meaningless, especially in light of the fact the October 1, 2011, amendment to section 4019, although part of the so-called realignment legislation, applies based on the date a defendant's crime is committed, whereas section 1170, subdivision (h), which sets out the basic sentencing scheme under realignment, applies based on the date a defendant is sentenced."[11] (*Id.* at p. 1553.)

The Court of Appeal, Fourth District, Division 3, agrees with *Ellis*. In *Rajanayagam, supra,* 211 Cal.App.4th 42, the court rejected an argument that the second sentence of section 4019, subdivision (h), "implies any days earned by a defendant *after* October 1, 2011, shall be calculated at the rate required by the current law, *regardless of when the offense was committed*." (*Id*. at p. 51.) The court concluded that such an interpretation would render meaningless the language in the first sentence (*ibid*.), which provides that the changes to the accrual of presentence conduct credit "shall apply

---

[11]    Section 1170, subdivision (h)(6), now provides: "The sentencing changes made by the act that added this subdivision shall be applied prospectively to any person sentenced on or after October 1, 2011."

14

prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011." (§ 4019, subd. (h).) Accordingly, the court concluded that adopting the defendant's interpretation would violate an elementary rule requiring courts, if possible, ascribe meaning to every word, phrase, and sentence of a statute and to avoid interpretations that render some words superfluous. (*Rajanayagam*, *supra*, 211 Cal.App.4th at p. 51.)

The *Rajanayagam* court concluded: "[S]ubdivision (h)'s first sentence reflects the Legislature intended the enhanced conduct credit provision to apply only to those defendants who committed their crimes on or after October 1, 2011. Subdivision (h)'s second sentence does not extend the enhanced conduct credit provision to any other group, namely those defendants who committed offenses before October 1, 2011, but are in local custody on or after October 1, 2011. Instead, subdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law. However inartful the language of subdivision (h), we read the second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law. [Citation.] To imply the enhanced conduct credit provision applies to defendants who committed their crimes before the effective date but served time in local custody after the effective date reads too much into the statute and ignores the Legislature's clear intent in subdivision (h)'s first sentence." (*Id.* at p. 52, fn. omitted.)

Certainly, "[i]t is a settled principle of statutory construction, that courts should 'strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous.' [Citations.] We harmonize statutory provisions, if possible, giving each provision full effect. [Citation.]" (*In re C.H.* (2011) 53 Cal.4th 94, 103.)

On the other hand, appellate courts may not "rewrite the clear language of [a] statute to broaden the statute's application." (*In re David* (2012) 202 Cal.App.4th 675,

15

682; *People v. Statum* (2002) 28 Cal.4th 682, 692 [a court may not rewrite a statute to conform to a presumed intent that is not expressed].)

As confirmed by the Supreme Court in *Brown, supra,* 54 Cal.4th at page 322, footnote 11, the first sentence means just what it says, but the necessary corollary of that sentence is that it does not apply to crimes committed prior to October 1, 2011; and the necessary implication is that for crimes committed prior to October 1, 2011, the statutory scheme that was displaced by the new terms of section 4019 continues to apply. It is axiomatic that since the new credit scheme applies prospectively (per the first sentence), everyone in jail prior to October 1, 2011, is there for a crime committed prior to that date, and subject to whatever credit scheme was operating at the time. However, to hold that appellant is entitled to the benefit of the October 1 amendment for days spent in custody after October 1, 2011, would require that we write an entire sentence into section 4019. That is, after the first sentence, we would have to add — "However, if a defendant has not been sentenced by October 1, 2011, for a crime he or she committed before October 1, 2011, he or she is entitled to one-for-one credits for any time spent in custody after that date up to and including the date of sentencing." As confirmed by the Supreme Court in *Brown*, the critical date in the statute is the date of the offense, and not the date when the presentence custody is served. (*Id*. at p. 322, fn. 11.)

A number of courts, including this one, have concluded that as to crimes committed before October 1, 2011, the current version of section 4019 is not applicable and former law governs calculation of conduct credit. (*People v. Hul* (2013) 213 Cal.App.4th 182, 186-187; *Rajanayagam, supra*, 211 Cal.App.4th at p. 51; *Verba, supra,* 210 Cal.App.4th at p. 993; *Ellis, supra*, 207 Cal.App.4th at p. 1553; see also *Kennedy, supra*, 209 Cal.App.4th at p. 400.) Again, we reach the same conclusion. In so doing, we reject appellant's claim that as a matter of statutory construction, he is entitled to the enhanced one-for-one credits for the time he spent in custody after October 1, 2011, up to and including the day he was sentenced.

16

*Disposition*

The judgment is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.