Filed 5/1/13  P. v. Warriner CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D060686 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE305720) |
| CHANCE ALLAN WARRINER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

A jury convicted Chance Allan Warriner of burglary (Pen. Code,[1] § 459; count 1) and receiving stolen property (§ 496, subd. (a); count 2).  It found true an allegation the burglary was of an inhabited dwelling.  (§ 460.)  In bifurcated proceedings, Warriner admitted he had suffered various prison priors, serious felony priors, and strike priors. The court sentenced him to a total prison term of 18 years.

---

1        All statutory references are to the Penal Code unless otherwise stated.

Warriner contends: (1) the court erroneously admitted two statements, one of which did not qualify as a prior consistent statement, and another that did not qualify as an inconsistent statement; (2) the court improperly admitted a defense investigator's testimony that did not qualify as lay or expert opinion; (3) the court erroneously instructed the jury with CALCRIM No. 371 regarding consciousness of guilt; (4) the prosecutor committed misconduct during closing argument; (5) there was cumulative error; and (6) the court's failure to award him presentence conduct credits under the amended version of section 4019 violated his constitutional right to equal protection. We affirm the judgment.

## FACTUAL BACKGROUND

*People's Case*

Loretta Bouton was a friend of Warriner and his parents, who lived on one side of her house in La Mesa, California. Cheryl Pontes lived on the other side of Bouton's house. Bouton testified that on the morning of October 15, 2010, Warriner went to Bouton's house for help to telephone his father. Afterwards, from her kitchen window, Bouton saw Warriner driving his girlfriend, Leslie Lucas, in Lucas's Volvo. Warriner exited his parents' driveway and reversed into Pontes's driveway. A few minutes later, Bouton saw Lucas carrying some dresser drawers into Pontes's house, and returning to the car with the drawers. Bouton saw Warriner and Lucas drive away quickly, leaving Pontes's front door open. Immediately afterwards, Bouton reported in a 911 call made at 2:35 p.m. that Warriner had burglarized the home. A recording of the call was played for

2

the jury. Bouton also telephoned Warriner's mother that day, informing her Warriner and Lucas had committed the burglary.

When Pontes returned home from work on October 15, 2010, she found her house in disarray, and realized someone had used her downstairs bathroom because its door was closed and the toilet seat was up. Missing from Pontes's dresser drawers were her jewelry, sunglasses, postage stamps, an iPod, watches, and other items. A file cabinet drawer also was missing.

Days after the burglary, Warriner telephoned Bouton, asking her what she had told police about the burglary. Her reply implicated Warriner in the burglary. Warriner asked Bouton whether police were looking for him. He told her not to be afraid because he would not hurt her. Throughout that conversation, Warriner never denied committing the burglary.

La Mesa Police Detective Katherine Lynch investigated the crime and interviewed Bouton at her house. Detective Lynch verified that one could see Warriner's parents' driveway from Bouton's kitchen window. Approximately six days after the burglary, Warriner and Lucas were arrested. Pontes's belongings and the Volvo were recovered at Warriner's apartment. Detective Lynch testified that days after the crime, Bouton was unable to identify Warriner in a photo lineup.

*Defense Case*

Warriner's stepsister, Sabrina Warriner,[2] testified that she spent two consecutive nights at hotels in San Diego around the date of the burglary: On October 13, 2010, she stayed at a Super 8, and the next night she stayed at a Howard Johnson. She had registered under her married name, Sabrina Garza. Sabrina claimed she paid for the rooms from her PayPal account, and produced a document purporting to prove that. However, the document did not have her name, a date, or the hotels' names. Sabrina testified that on October 15, 2010, at around 2:00 p.m., she and Warriner went to a local park for just over one hour. Afterwards, she left him at his apartment. In December 2010, Warriner wrote Sabrina a letter asking if she remembered the date of her San Diego trip, without telling her about the burglary charge.

James Mortimer testified he lived on the same street as Warriner's parents. Around October 15, 2010, Warriner's father told him Warriner was implicated in the burglary. Mortimer subsequently realized that on that day, when he had gone to pick up his daughter from school between 2:15 p.m. and 2:30 p.m., he had seen another man, not Warriner, driving the Volvo with Lucas as passenger. Nonetheless, Mortimer did not timely inform police about his observations.

*People's Rebuttal Case*

Detective Lynch investigated Sabrina's claims regarding her hotel stays in San Diego. No records showed Sabrina was registered at the Howard Johnson on October 14, 2010; rather, the records showed Sabrina had stayed there on the night of October 11,

---

2     We refer to Sabrina Warriner by her first name to avoid confusion.

2010. Detective Lynch found no records indicating Sabrina had stayed at the Super 8 hotel at any time in 2010.

DISCUSSION

I.

Warriner contends the trial court prejudicially erred by permitting Detective Lynch to testify that in February 2011, during the investigation, Bouton had said that from her kitchen window she had seen Warriner drive the Volvo from Warriner's parents' driveway. Warriner claims that testimony was inadmissible as a prior consistent statement under Evidence Code sections 791 and 1236, because although Bouton's trial testimony was consistent with her statement to Detective Lynch, Bouton had made an inconsistent statement *earlier*, in November 2010, telling a defense investigator she could not see who was driver of the Volvo as it passed her house towards Pontes's house. Warriner specifically contends: "[T]he temporal element of [Evidence Code section 791, subdivision (b)] was not met. Assuming Mrs. Bouton had some motive for fabrication . . . that motive would have arisen during her final pretrial interview with [Detective Lynch] . . . on February 28, 2011. [Bouton's] prior consistent statement made on that same date would not have been 'before' the motive arose within the meaning of [Evidence Code section 791, subdivision (b)]."

5

"To be admissible as an exception to the hearsay rule, a prior consistent statement must be offered (1) after an inconsistent statement is admitted to attack the testifying witness's credibility, where the consistent statement was made before the inconsistent statement or (2) when there is an express or implied charge that the witness's testimony recently was fabricated or influenced by bias or improper motive, and the statement was made prior to the fabrication, bias, or improper motive." (*People v. Riccardi* (2012) 54 Cal.4th 758, 802.)  The abuse of discretion standard applies to a trial court's ruling on the admissibility of evidence.  (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)

Here, assuming without deciding the court committed error, it was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 826.)  The question of what Bouton saw from her kitchen window was relevant to establishing the burglars' identities.  The jury heard conflicting testimony on this issue, but elected to convict Warriner.  On the one hand, Detective Lynch testified Bouton failed to identify Warriner in a photo lineup.  Further, Mortimer testified Warriner was not driving the Volvo around the time of the burglary. On the other hand, Bouton testified she saw Warriner driving from his parents' driveway to Pontes's driveway, and later leaving Pontes's house.  Bouton immediately identified Warriner as the burglar in both the 911 call and the call to Warriner's mother.  Additional evidence supported Warriner's conviction:  Pontes testified her bathroom seat was up when it is usually down, thus leading to the inference that a male, possibly Warriner, had entered her house.  Warriner telephoned Bouton asking about the burglary and whether police sought him, but never denied his involvement in the burglary.  Finally, police recovered the stolen items from Warriner's and Lucas's possession.  We conclude that on

6

this record, it is not reasonably likely the jury would have reached a more favorable verdict absent admission of the challenged testimony.

## II.

Warriner contends the trial court erroneously admitted Bouton's out of court statement to Detective Lynch during the investigation that Warriner's hair was "longer, like he was growing it out."  Warriner claims that statement did not qualify as a prior inconsistent statement under Evidence Code sections 1235 and 770.  Warriner notes that, on cross-examination, Bouton had testified inconsistently that Warriner had a "shaved" head on the day of the burglary.  However, on redirect examination, Bouton was not given an opportunity to explain or deny her contrary statement to Detective Lynch.

Warriner concedes that at trial defense counsel did not object to the specific challenged testimony, but urges us to reach the merits of the issue because his attorney provided ineffective assistance by failing to object.[3]  We regard the claim as forfeited because no specific objection was made to the challenged testimony.  (Evid. Code, § 353, subd. (a).)  In any event, Warriner's ineffective assistance of counsel claim fails.

A defendant seeking relief on the basis of ineffective assistance of counsel must show both that counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable

---

[3]     Warriner had objected on hearsay grounds to Bouton's statements made to Detective Lynch in February 2011 but the court, concluding it was permissible rehabilitation testimony, overruled the objection.

determination would have resulted in the absence of counsel's failings. (*People v. Fosselman* (1983) 33 Cal.3d 572; *Strickland v. Washington* (1984) 466 U.S. 668, 693-694.) "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' " (*Harrington v. Richter* (2011) ___ U.S. ___ [131 S.Ct. 770, 788, 178 L.Ed.2d 624, 642].) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*In re Cox* (2003) 30 Cal.4th 974, 1019-1020, quoting *Strickland*, at p. 697.)

Again, the issue of whether Warriner's hair was long or his head was shaved is relevant to whether Bouton properly identified him as the burglar. As set forth in detail above, there was sufficient evidence to support Bouton's identification of Warriner as the burglar, and to support the jury's conviction. We conclude it is not reasonably probable the jury would have reached a more favorable verdict absent the testimony regarding Warriner's hair length. In the absence of a showing of prejudice, Warriner's ineffective assistance of counsel claim fails.

III.

Warriner contends the court prejudicially erred by permitting the defense investigator, Richard Chavez, to testify he had found credible Bouton's pretrial statements implicating Warriner and Lucas in the burglary, because Chavez's testimony was not proper lay or expert testimony.

Chavez testified on direct examination that he had conducted a pretrial interview with Bouton, and her account of the burglary was substantively consistent with her trial

8

testimony. On Chavez's cross-examination, the prosecutor asked whether Bouton had trouble remembering the burglary incident during the pretrial interview. Chavez replied he did not believe so. The prosecutor next asked, "Did you believe what she was telling you?" Chavez replied, "Yes, I did." Warriner concedes he did not object to this specific testimony, but claims a general objection he had made applied to this question. He nevertheless urges us to address his contention on the merits, claiming he received ineffective assistance of counsel.

We regard the claim as forfeited. "When a party does not raise an argument [before the trial court], he may not do so on appeal." (*People v. Clark* (1993) 5 Cal.4th 950, 988, fn. 13, disapproved on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *In re Michael L.* (1985) 39 Cal.3d 81, 88 ["Objections not presented to the trial court cannot be raised for the first time on appeal"].) " 'The reason for this rule is that "[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided." [Citations.] "[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error." ' " (*People v. Hawkins* (2012) 211 Cal.App.4th 194, 203.)

Lay opinion about a person's behavior is admissible if it is "[r]ationally based on the perception of the witness" and "[h]elpful to a clear understanding of [the witness's] testimony." (Evid. Code, § 800; *People v. Farnam* (2002) 28 Cal.4th 107, 153.) However, if the jury is just as competent as the witness to draw a conclusion concerning

9

the matter set forth in the witness's testimony, the trial court should not admit the opinion testimony because in this circumstance the opinion is of no assistance to the jury's understanding of the witness's testimony. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 77.) Thus, a trial court properly admits lay opinion testimony if the matters observed are "difficult to put into words" because of their complexity or subtlety, whereas it properly excludes lay opinion testimony when the lay witness can adequately describe his or her observations without using opinion wording. (*People v. Hinton* (2006) 37 Cal.4th 839, 889; *People v. Brown* (2001) 96 Cal.App.4th Supp. 1, 33.) The decision concerning admission of lay opinion testimony is a matter that rests within the discretion of the trial court. (*People v. Thornton* (2007) 41 Cal.4th 391, 429; *People v. Brown*, *supra*, 96 Cal.App.4th Supp. at p. 33.)

Here, the People concede Chavez's testimony was improper, but reject the ineffective assistance of counsel claim. Based on the evidence set forth in detail above, we conclude that it was not reasonably likely Warriner would have received a more favorable verdict absent Chavez's comment. (See *People v. Boyette* (2002) 29 Cal.4th 381, 428-429 [state law reasonable probability standard of prejudice applies when evidentiary error did not deprive defendant of meaningful opportunity to present defense].) Because he cannot show prejudice, his ineffective assistance of counsel claim fails.

IV.

Warriner contends the court's instruction to the jury with CALCRIM No. 371 regarding consciousness of guilt, given over defense objection, was improperly

10

argumentative because there was insufficient evidence to support an inference that he had encouraged Sabrina to testify falsely.

Outside of the jury's presence, the defense objected to instruction with CALCRIM No. 371, claiming no evidence showed Warriner had asked Sabrina to lie. The court's tentative ruling was to revisit the issue if the prosecution presented evidence supporting the instruction. In the end, the court gave the jury instruction.[4]

We conclude any error in giving the instruction was harmless. By the instruction's terms, evidence of consciousness of guilt, alone, does not compel a finding of guilt. Rather, it was for the jury to evaluate the credibility of Bouton—who testified she saw Warriner driving from the crime scene—and that of Sabrina, whose contrary testimony placed her and Warriner at a park at the time the burglary took place. By its verdict, the jury elected to believe Bouton. As previously explained, evidence of Warriner's guilt was strong. Under the circumstances, reversal is not warranted. (Accord, *People v. Pride* (1992) 3 Cal.4th 195, 248-249.)

V.

Warriner contends the prosecutor made several statements during closing argument that constituted misconduct. Specifically, he points out the prosecutor accused Sabrina of lying "eleven times over the course of four transcript pages of argument." Warriner further claims the prosecutor attacked Mortimer's credibility by stating, "You

---

4      The Court instructed the jury: "If the defendant tried to create false evidence or obtain false testimony, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself."

11

know, just because [Mortimer] says, 'I saw some other guy in the car,' even if it's true, which I don't believe it is, it still doesn't prove that [Warriner] wasn't in that car." Warriner adds the prosecutor vouched for Bouton's credibility because in the context of acknowledging Bouton's failure to recognize Warriner during the photo lineup, the prosecutor explained generally how humans recognize others not just facially, but with the added context of their voice, gait and body language. The prosecutor's challenged statement followed: "I can tell you that from experience that I work with a variety of police officers every day. I recognize them maybe by their names, and I recognize them—most all the time they're in uniform. I go to the grocery store and see a police officer, they're not in their uniform, I don't always recognize them until they say, 'Hey, it's me,' and I'm like, 'Oh, okay.' But we recognize people based on a variety of factors. It's just not one snapshot of the face." Finally, Warriner claims the prosecutor "maligned [him] and trial counsel with allegations of a fabricated defense," (italics and some capitalization omitted) citing the prosecutor's statement at the start of rebuttal argument: " 'Put it all together. Put it all together.' That's a statement that I heard the defense attorney say several times when talking about the defense witnesses. They had to put it all together. And to put it all together to get up here and testify, they had to talk to either the defendant or one of his parents. They couldn't figure it out on their own, but only could figure it out and put it all together after talking to someone, to either him or someone related to him. [¶] . . . Telling the truth is not hard. [Bouton] didn't have a problem doing it, and none of the other People's witnesses. It's a little harder to get in this chair and lie, which is what the defense witnesses did."

12

Warriner concedes his trial counsel did not object to any of the prosecutor's statements set forth above, but urges us to reach the merits of his claim on grounds he received ineffective assistance of trial counsel, who had no reasonable purpose for failing to object.

A prosecutor should not misstate the evidence or the law; attack the integrity of defense counsel; or vouch for the strength of the prosecution's case based on matters outside the record. (*People v. Hill* (1998) 17 Cal.4th 800, 823, 829, 832; *People v. Huggins* (2006) 38 Cal.4th 175, 206-207.) "Prosecutors have wide latitude to discuss and draw inferences from the evidence at trial. [Citation.] Whether the inferences the prosecutor draws are reasonable is for the jury to decide." (*People v. Smith* (2003) 30 Cal.4th 581, 617.) "The prosecutor is permitted to urge, in colorful terms, that defense witnesses are not entitled to credence, to comment on failure to produce logical evidence, [and] to argue on the basis of inference from the evidence that a defense is fabricated . . . ." (*People v. Pinholster* (1992) 1 Cal.4th 865, 948.)

A prosecutor's intemperate behavior violates the federal constitution when it comprises a pattern of conduct so egregious that it infects the entire trial with such unfairness as to make the conviction a denial of due process. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) "A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

13

" 'Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " ' " (*People v. Hill*, *supra*, 17 Cal.4th at p. 819.) " 'In evaluating a claim of prejudicial misconduct based upon a prosecutor's comments to the jury, we decide whether there is a reasonable possibility that the jury construed or applied the prosecutor's comments in an objectionable manner.' " (*People v. Valdez* (2004) 32 Cal.4th 73, 132-133.)

Here, we conclude the prosecutor's challenged statements did not so infect the trial with unfairness as to constitute a denial of due process. Regarding Warriner's claim the prosecutor maligned defense counsel for fabricating a defense, we note the challenged statements were no different than arguments found proper by the California Supreme Court as summarized in *People v. Cunningham* (2001) 25 Cal.4th 926. In that case, the court concluded, "The prosecutor's remarks . . . would be understood by the jury as an admonition not to be misled by the defense interpretation of the evidence, rather than as a personal attack on defense counsel." (*Id*. at pp. 1002-1003.)

Regarding Warriner's claim the prosecutor accused Sabrina and other defense witnesses of lying, we point out the prosecutor's comments were in response Sabrina's testimony she was registered in San Diego hotels around the date of the burglary, when in fact Detective Lynch's investigations contradicted that testimony. We conclude that under the circumstances, the prosecutor's statements did not focus the jury's attention on irrelevant matters and divert the prosecution from its proper role of commenting on the

evidence and drawing reasonable inferences therefrom. (See *People v. Dykes* (2009) 46 Cal.4th 731, 772.)

Regarding Warriner's claim the prosecutor improperly vouched for Bouton, we do not believe the jury would have interpreted in an objectionable manner the prosecutor's statement about her own difficulty in recognizing her coworkers in the grocery store. An admonition would have cured any error and, in any event, "the jury could not possibly have been misled to defendant's prejudice by this single comment." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1341.) We conclude the prosecutor did not commit prejudicial misconduct.

## VI.

Warriner contends the cumulative effect of the trial court's errors mandates reversal.

In a close case, the cumulative effect of multiple errors may be sufficient to cause the trial to have been unfair and hence cause a miscarriage of justice. (*People v. Buffum* (1953) 40 Cal.2d 709, 726, overruled on other grounds by *People v. Morante* (1999) 20 Cal.4th 403, 415.) Multiple errors may require reversal even when the errors, considered individually, would not warrant the same conclusion. (*People v. Jackson* (1991) 235 Cal.App.3d 1670, 1681.) If, in the absence of the cumulative errors, it is reasonably probable that the jury would have reached a result more favorable to a defendant, the decision must be reversed. (*People v. Holt* (1984) 37 Cal.3d 436, 459, superseded by statute on another ground as stated in *People v. Muldrow* (1988) 202 Cal.App.3d 636,

15

645.)  As noted, we have found no prejudicial error, and no errors which, if combined, would cause a miscarriage of justice.  Therefore, this claim fails.

VII.

Warriner contends that under the most recent amendment to section 4019, subdivision (h), and principles of equal protection, he is entitled to additional conduct credit, despite the fact that his crimes were committed before the amended statute's effective date:  October 1, 2011.  We disagree.

"Pursuant to the October 1, 2011, amendment (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 35, eff. Sept. 21, 2011, operative Oct. 1, 2011), subdivision (h) of section 4019 presently states:  'The changes to this section . . . shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011.  Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law.' "  (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1549-1550 (*Ellis*).)  Since the Legislature has expressly stated that this latest amendment applies prospectively only, "the October 1, 2011, amendment does not apply retroactively as a matter of statutory construction."  (*Ellis*, at p. 1550.)

In *People v. Brown* (2012) 54 Cal.4th 314, 318-322 (*Brown*), the California Supreme Court held that under general rules of statutory construction a prior amendment to section 4019 must be read prospectively only, even though the Legislature did not expressly so state, and even though this meant that "prisoners whose custody overlapped the statute's operative date . . . earned credit at two different rates."  (*Brown*, at p. 322.)  The court reasoned that "the important correctional purposes of a statute authorizing

16

incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*Brown*, at pp. 328-330; see *People v. Lara* (2012) 54 Cal.4th 896, 906, fn. 9.)

Three appellate courts, relying on *Brown's* reasoning, have rejected the equal protection argument defendant raises as to the October 1, 2011 amendment to section 4019. (*Ellis*, *supra*, 207 Cal.App.4th at pp. 1551-1553; *People v. Garcia* (2012) 209 Cal.App.4th 530, 541; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 395-399.) We agree with these cases.

Warriner's reliance on *In re Kapperman* (1974) 11 Cal.3d 542, 544-545 (*Kapperman*) is unavailing. The California Supreme Court reviewed section 2900.5, which made actual custody credits prospective, applying only to persons delivered to the Department of Corrections after the effective date of the legislation. (*Kapperman*, at pp. 544-545.) The court concluded that this limitation violated equal protection because there was no legitimate purpose to be served by excluding those already sentenced, and extended the benefits retroactively to those improperly excluded by the Legislature. (*Id.* at p. 545.) In our view, *Kapperman* is distinguishable from the instant case because it addressed actual custody credits, not conduct credits. Conduct credits must be earned by a defendant, whereas custody credits are constitutionally required and awarded automatically on the basis of time served.

The California Supreme Court recently confirmed, "Credit for time served

17

is given without regard to behavior, and thus does not entail the paradoxical consequences of applying retroactively a statute intended to create incentives for good behavior. *Kapperman*[, *supra*, 11 Cal.3d 542] does not hold or suggest that prisoners serving time before and after the effective date of a statute authorizing *conduct* credits are similarly situated." (*Brown*, *supra*, 54 Cal.4th at p. 330.)

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.