Filed 6/21/13  P. v. Vand CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW VAND,<br><br>    Defendant and Appellant. | C070055<br><br>(Super. Ct. No. 62-103042) |

Pursuant to the Sex Offender Registration Act, defendant, a transient, must register within five working days of coming into or residing in a new jurisdiction  (Pen. Code, § 290, subd. (b))[1] and update his registration within five working days if he establishes a residence and is no longer a transient (§ 290.011, subd. (b)).  A jury found defendant guilty of failing to register as a sex offender and failing to update sex offender registration and the court sentenced defendant to 32 months in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

1

Defendant appeals, contending that (1) law enforcement failed to advise him of his *Miranda*[2] rights, and therefore his statements to the arresting officer should have been suppressed; (2) there was insufficient evidence to support a guilty verdict on either count; and (3) application to his case of a prior version of section 4019, subdivision (f), concerning presentence custody conduct credits, rather than the recently amended provision (in the Criminal Justice Realignment Act of 2011), violates equal protection. We find that the trial court appropriately denied the motion to suppress, the verdict was supported by sufficient evidence, and applying prior section 4019, subdivision (f) is constitutional. Additionally, we reviewed the sealed record of defendant's *Pitchess*[3] motion, at defendant's request, and find the trial court did not err in refusing to disclose any information. Therefore, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant had most recently registered in San Jose on November 3, 2010. On Sunday, November 14, 2010, at approximately 10:15 p.m., a police officer saw defendant's car parked outside of a home in Roseville. Defendant was not in the car at the time, and the lights in the home were not on.

On November 27, nearly two weeks later, the officer returned to the home in Roseville, but did not see defendant or his car. The officer spoke briefly with L.F., who lived there with her fiancé Sergio and their minor children—not about defendant, but to warn her about recent burglaries in the area. When the officer returned to L.F.'s home later that day, defendant's car was parked at the house. Approximately 15 minutes after the officer arrived, defendant left the house in his car. In his marked police car the officer followed defendant approximately one-half mile into a Dollar Tree parking lot.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].
[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

After defendant parked his car and was walking towards the buildings, the officer called out to defendant, "Can I speak to you?" Defendant stopped, and the officer stated, "I need to talk to you about a couple of things." Defendant agreed but requested that they talk in private, so they went to the alcove of an empty business. After doing a pat-down search, the officer advised defendant that he was not under arrest and twice began to read him his *Miranda* rights. Defendant stopped the officer, and never heard his full *Miranda* rights "because he knew he wasn't under arrest."

The officer asked defendant what he was doing in Roseville; defendant said that he was a transient in San Jose and that he had been staying at his friend Sergio's house in Roseville about four nights each week since March 2010 and had accepted a job in Roseville. Defendant initially said that while he refreshes at Sergio's house, he mostly stays in his car; however, when the officer told defendant that he had "checked on his vehicle a couple of times in the middle of the night, and [defendant] wasn't there," defendant then said he never went to sleep at night. Defendant also stated that he was last in San Jose approximately two weeks before; since then, he had been in Roseville. The officer then arrested defendant for failure to register under section 290. Incident to arrest, the officer searched defendant's cell phone and found text messages indicating that defendant "was staying . . . with Sergio and [L.F.], and also he was watching the two children [who] were there." Two other officers, one with a K-9 officer, arrived at the Dollar Tree parking lot to provide assistance if needed.

Defendant was charged with failure to register as a sex offender and failure to update registration. Defendant made a *Pitchess* motion and a motion to suppress evidence based on *Miranda*, *supra*, 384 U.S. 436 [16 L.Ed.2d 694]. The trial court found no admissible evidence during its in camera document review for the *Pitchess* motion and denied the motion to suppress.

During a jury trial, the prosecution offered testimony of the arresting officer and L.F., and several text messages found on defendant's cell phone. L.F. testified that defendant had been staying at her house three or four days each week since April or May, and that she had cleared part of a bedroom so that he could have a private place to stay.

The jury found defendant guilty of both counts. The court denied defendant's motion to strike a prior serious felony (a 1993 robbery). (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.) The court then sentenced defendant to the low term of 16 months for each count, doubled the term based on the prior strike, and stayed the sentence as to count two under section 654.

## DISCUSSION

### I. Defendant Was Not Subject to Custodial Interrogation

Defendant argues that law enforcement failed to advise him of his *Miranda* rights while he was subject to custodial interrogation, thereby violating his constitutional right to remain silent. We disagree.

"On review of a trial court's decision on a *Miranda* issue, we accept the trial court's determination of disputed facts if supported by substantial evidence, but we independently decide whether the challenged statements were obtained in violation of *Miranda*." (*People v. Davis* (2009) 46 Cal.4th 539, 586.) A defendant subject to custodial interrogation "must be warned prior to any questioning that he has the right to remain silent [and] that anything he says can be used against him in a court of law." (*Miranda*, *supra*, 384 U.S. at p. 479 [16 L.Ed.2d at p. 726].) Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Id.* at p. 444 [16 L.Ed.2d at p. 706].) Absent a formal arrest, a defendant is subject to custodial interrogation if he " ' "is physically deprived of his freedom of action in any way or is led

4

to believe, as a reasonable person, that he is so deprived." ' " (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.)

Determining whether custody occurred is a fact-specific inquiry based on the totality of the circumstances. (*Forster*, *supra*, 29 Cal.App.4th at p. 1754.) Several factors are useful in this inquiry: "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." (*Id.* at p. 1753.) Other factors "are [(6)] whether the suspect agreed to the interview and was informed he or she could terminate the questioning, [(7)] whether police informed the person he or she was considered a witness or suspect, [(8)] whether there were restrictions on the suspect's freedom of movement during the interview, and [(9)] whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and [(10)] whether the suspect was arrested at the conclusion of the interview." (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403-1404 (*Pilster*).)

Here, defendant concedes there was no formal arrest during the questioning, but argues "a reasonable person would not have felt free to leave," and he "was arrested at the conclusion of the interview." (*Pilster*, *supra*, 138 Cal.App.4th at p. 1404.) Furthermore, the ratio of officers to suspect was three to one. However, "it is the totality of circumstances that is relevant; 'no one factor is dispositive.' " (*Forster*, *supra*, 29 Cal.App.4th at p. 1754.) The other factors do not support a custody determination. For example, the length of detention was brief, it occurred in a public place, defendant agreed to speak with the officer, and defendant's movement was not restrained. Defendant contends that "[t]he officer had [him] both literally and figuratively backed into a corner." While defendant's back was to the corner of the alcove in which the two were standing, this is because defendant requested they go to a private place to talk;

5

indeed, this request *from defendant*, a request the officer granted, shows a certain control over the situation by defendant that is indicative of a noncustodial interaction. While the officer never told defendant that he was "free to go," the officer advised defendant that he was not under arrest, defendant knew he was not under arrest, and there was nothing to stop defendant from walking to his car in the parking lot and driving away.

While there were three uniformed officers on scene, this three-to-one ratio is insufficient, in and of itself, to support a finding of custodial interrogation. (See, e.g., *People v. Breault* (1990) 223 Cal.App.3d 125, 135 [finding no *Miranda* violation when two officers questioned the defendant]; *People v. Bejasa* (2012) 205 Cal.App.4th 26, 36, 38-39 [two officers questioning the defendant supported a finding of no *Miranda* violation; however, *seven* officers at the scene supported the ultimate finding of custodial interrogation].) In terms of proximity, only the arresting officer was close to defendant (approximately three to five feet from defendant); the second was standing 10 to 12 feet away, and the third was 30 to 40 yards away with his K-9 officer. Furthermore, it is unclear whether this third officer even got out of his vehicle or whether defendant saw him. The officers never drew weapons, nor did they have their emergency lights on.

Defendant emphasizes that the arresting officer began to "Mirandize" him twice because he " 'was in the corner and [the officer was] in uniform.' " Both times, however, defendant stopped him and never heard his full *Miranda* rights "because he knew he wasn't under arrest." The officer's subjective belief that he should inform defendant of his *Miranda* rights has no bearing on the objective inquiry of whether "a reasonable person [would] interpret the restraints used by the police as tantamount to a formal arrest." (*Pilster*, *supra*, 138 Cal.App.4th at p. 1403; see *Stansbury v. California* (1994) 511 U.S. 318, 323 [128 L.Ed.2d 293, 298] ["the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned"].)

Under this totality of the circumstances inquiry, we find that defendant was not subject to custodial interrogation; therefore, no *Miranda* violation occurred and the trial court correctly admitted defendant's statements.

**II. There Was Sufficient Evidence to Support the Jury's Guilty Verdict**

Defendant argues there was insufficient evidence (1) that he "had established a residence in Roseville at any time" and (2) that "five business days during which [defendant] failed to register had passed." We disagree.

As to the two charges against defendant, the prosecutor was required to prove beyond a reasonable doubt that defendant failed to register within five working days of "coming into, or changing his . . . residence" to Roseville (§ 290, subd. (b)) and that defendant had been a transient but moved to a residence in Roseville and failed to update his registration within five working days (§ 290.011, subd. (b)). " '[T]ransient' means a person who has no residence. 'Residence' means one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there." (§ 290.011, subd. (g).)

In reviewing this evidentiary sufficiency issue, we must determine whether, after viewing all of the evidence in the light most favorable to the judgment, there is substantial evidence to support the trier of fact's findings. (*People v. Johnson* (1980) 26 Cal.3d 557, 562.) Substantial evidence is that "which is reasonable, credible, and of solid value." (*Id.* at p. 578.) Furthermore, if "the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.)

Neither party disputes that defendant is a registrant under the Sex Offender Registration Act, nor that his most recent registration before the offenses was as a

transient in a different jurisdiction (San Jose). Therefore, the only disputed elements for both offenses in this evidentiary sufficiency issue are (1) residence and (2) the passage of five working days.

As to residence, defendant contends that residence was not established because "[h]e had no ties to Roseville other than through a friend with whom he, and others, would occasionally stay. He never made any attempt to register there, did not have a parole agent there, had not grown up there, and had no family there." However, these facts miss the mark of "residence" as defined in the Sex Offender Registration Act: Residence is "one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there." (§ 290.011, subd. (g).) Defendant had been staying at the home in Roseville four nights each week since March 2010; L.F. had cleared part of a bedroom so that defendant and visitors could have a private place to stay; his unoccupied car was parked at the home on November 14, 2010, at 10:15 p.m. when the lights in the home were off; defendant and his car were again at the home on November 27; he had accepted a job in Roseville; and he had last been in San Jose two weeks before. Additionally, text messages were introduced into evidence indicating that defendant "was staying at the address with Sergio and [L.F.], and also [defendant] was watching the two children [who] were there." This constitutes substantial evidence that defendant "regularly resides" at the home in Roseville.

As to the passage of five working days, defendant emphasizes the arresting officer had "absolutely no idea how often [defendant] was present in Roseville between [November] 14th and the 27th." While this is true, defendant's focus is misplaced. The inquiry is not whether defendant was *present* in Roseville for five working days, but whether five working days had passed since defendant *established a residence* in Roseville. (§§ 290, subd. (b), 290.011, subd. (b).) The Roseville home is an "address[] at which [defendant] regularly reside[d]" (§ 290.011, subd. (g)) since March. An

8

abundance of working days had passed between March 2010 (when defendant began regularly residing at the Roseville home) and November 2010 (when defendant was charged with the offenses). Therefore, there is substantial evidence that five working days had passed since defendant established a residence in Roseville.

Based on a review of the entire record in the light most favorable to the judgment, there is sufficient evidence for the jury to have found defendant guilty of failure to register and failure to update his registration.

### III. *Pitchess* **Motion**

Defendant requests that we review the sealed record of his *Pitchess* motion concerning any discoverable information regarding duty improprieties in the investigating officer's personnel file. We have reviewed the sealed record and find the trial court followed the appropriate procedures and did not abuse its discretion in concluding there was nothing discoverable therein. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1220, 1228–1229 [describing the required procedures for the trial court to follow for a *Pitchess* motion].)

### IV. **Presentence Custody Conduct Credits**

Finally, defendant contends that, based on equal protection, a recent amendment to section 4019, subdivision (f), governing the accrual of presentence custody conduct credits, must be applied to him, even though he committed his offense before the effective date—October 1, 2011—of this explicitly prospective amendment. We disagree.

As part of the Criminal Justice Realignment Act of 2011, the Legislature increased the rate at which inmates accrue presentence custody conduct credits. (Stats. 2011, ch. 15, § 482, pp. 442-443.) The Legislature specified that this more generous rate applies only to inmates who committed offenses *on or after* October 1, 2011. (Stats.

9

2011, ch. 39, § 53, pp. 239-240.)  Inmates who committed offenses *before* October 1, 2011, accrue credits at the previous, less-generous rate.  (§ 4019, subd. (h).)  Defendant correctly points out that "[d]efendants [like him] whose offenses are prior to October 1, 2011, [are eligible to] receive fewer presentence conduct credits than those defendants whose offenses were committed on or after October 1, 2011, notwithstanding that the length of presentence custody from October 1, 2011, may be identical."  However, it does not follow that this distinction violates his right to equal protection.

An equal protection violation occurs when (1) "the state has adopted a classification [in law] that affects two or more similarly situated groups in an unequal manner" (*In re Eric J.* (1979) 25 Cal.3d 522, 530, italics omitted) and (2) the classification fails to satisfy the requisite level of scrutiny (see *FCC v. Beach Communications* (1993) 508 U.S. 307, 313 [124 L.Ed.2d 211, 221]; *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53 (*Rajanayagam*)).  As section 4019 regarding presentence custody credits is "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights," rational basis is the appropriate standard of review.  (*FCC v. Beach Communications*, *supra*, 508 U.S. at p. 313 [124 L.Ed.2d at p. 221]; *People v. Wilkinson* (2004) 33 Cal.4th 821, 837-838; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 397; *People v. Ward* (2008) 167 Cal.App.4th 252, 258 [rational basis review applies to equal protection challenges based on sentencing disparities (such as the one in the present case); if strict scrutiny were applied in these contexts, the judiciary would impermissibly intrude into the legislative domain of setting criminal law policy].)  As such, "a legislative classification must be upheld 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " (*FCC v. Beach Communications*, at p. 323, fn. 3 [124 L.Ed.2d at p. 227, fn. 3].)

Here, the two groups affected by the current version of section 4019 are (1) defendants in custody on or after October 1, 2011, who committed an offense *before* October 1, 2011, and (2) defendants in custody on or after October 1, 2011, who committed an offense *on or after* October 1, 2011. In dicta, our Supreme Court has stated that these groups are not similarly situated (*People v. Brown* (2012) 54 Cal.4th 314, 328-330), and the Fifth and Sixth Appellate Districts have agreed (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1552; *People v. Kennedy*, *supra*, 209 Cal.App.4th at p. 397). However, the Second Appellate District, Division One, and the Fourth Appellate District, Division Three, have not been persuaded by the Supreme Court's dicta, and have found these two groups similarly situated. (*People v. Verba* (2012) 210 Cal.App.4th 991, 995-996 (*Verba*); *Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 53-54.)

Assuming arguendo that the groups are similarly situated, there is still no equal protection violation because the statute is supported by a rational basis. "[T]he Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and later time." (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505 [55 L.Ed. 561, 563].) "[T]he practical necessity that a statutory change have a beginning provides a rational basis for classifications that fall on either side of the statute's effective date." (*Verba*, *supra*, 210 Cal.App.4th at p. 996.) The effective date of October 1, 2011, is a practical necessity, and therefore constitutes a rational basis. Similarly, " '[r]equiring the Legislature to apply retroactively any change in the law benefitting criminal defendants imposes unnecessary additional burdens on the already difficult task of fashioning a criminal justice system that protects the public and rehabilitates criminals.' " (*Id.* at p. 997.) Moreover, holding defendants accountable to the laws in force at the time they committed their offenses is an important state interest; failure to do so "weakens the deterrent effect of the law as it stood when the inmate committed the crime." (*Ibid.*)

11

For these reasons, applying prior section 4019 to those defendants who committed their offenses before October 1, 2011, is supported by a rational basis. Application of the less-generous accrual rate of presentencing custody conduct credits, in effect when defendant committed his offenses in November 2010, does not violate his right to equal protection.

## DISPOSITION

The judgment is affirmed.


                        BUTZ         , J.


We concur:


        RAYE        , P. J.


        DUARTE       , J.