Filed 8/27/13  P. v. Hermosillo CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037917 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1070962) |
| v. | |
| JOSE HORACE HERMOSILLO, | |
| Defendant and Appellant. | |

Defendant Jose Horace Hermosillo entered a negotiated plea of guilty to three counts related to a burglary and vandalism of a vehicle committed in November 2010, six counts related to a burglary of Valley Medical Center committed in March 2010, and one count of false application for a driver's license committed in January 2008.  And, after a court trial, the trial court found true an allegation for purposes of the Three Strikes law and nine prior-prison-term allegations for purposes of sentence enhancements.  It sentenced defendant to 13 years and eight months in prison.  On appeal, defendant contends that (1) the trial court erred by sentencing him to a term in excess of the plea bargain, (2) his 16-month consecutive sentence for vandalism constitutes improper multiple punishment (Pen. Code, § 654),[1] (3) he received ineffective assistance of counsel because his counsel failed to object to the consecutive sentence for vandalism, and (4) he is entitled to additional presentence custody credits via retroactive application

_____

[1] Further unspecified statutory references are to the Penal Code.

of the October 2011 amendment to section 4019, which facially applies to defendants who committed their crimes after October 1, 2011. We disagree and affirm the judgment.

BACKGROUND

Defendant's counsel announced the terms of the plea bargain as follows: "Your Honor, he is going to plead . . . to everything and admit the priors conditionally. [¶] We are going to have a court trial on that at some point. And he'll waive his right to a jury trial as to that. [¶] . . . [¶] And for that he's going to receive a top of eight years, eight months. [¶] . . . [¶] Also, he's going to be out of custody on bond for 90 days but with the proviso with a *Cruz*[2] waiver he has to show up here every 30 days. And the Court will continue it again. But the Court wants to have some handle on him and not just out of custody for the 90 days without the Court having some control on him. [¶] . . . [¶] And we've agreed that the two counts on the ID impersonating somebody, and also the perjury are [section] 654 which gives him a maximum 22 years, four months."

The trial court then asked defendant whether he understood the proposed disposition, and defendant responded "I do." The trial court thereafter specified: "Now, you need to understand if you fail to appear at sentencing or at any of these 30-day periods that I set, the plea bargain will not be in effect. And I will be able to impose any sentence authorized by law." To this, defendant replied, "I understand." The trial court then obtained waivers of defendant's constitutional rights and accepted defendant's guilty pleas. It ordered defendant to appear in 30 days for a court trial and sentencing. And it reminded defendant that "the maximum term you could get in this case under the pleas that you've entered is 22 years and four months." To this, defendant replied, "I understand."

---

[2] *People v. Cruz* (1988) 44 Cal.3d 1247, 1250 (waiver of right to withdraw plea if trial court imposes sentence in excess of plea-bargained sentence) (*Cruz*).

Defendant failed to appear as ordered, the trial court issued a bench warrant, and defendant was apprehended. At a court trial on the prior-conviction allegations, the trial court found the allegations true.

At sentencing, defendant's counsel acknowledged that defendant had failed to appear as ordered but offered that he had "medical records" that defendant "was--went down to be treated" to show "the court that he was in custody at that time." He asked the trial court to "be lenient in this case" and "grant the eight-year four-month that he pled to." The People replied that defendant was "a one-man crime wave" who had been released on a *Cruz* waiver over the People's objection and not only failed to appear but also "picked up a new case in the meantime." They noted that the probation department was recommending 16 years and eight months. Defendant then apologized for missing the court date and explained: "I didn't handle the stress well and I reverted to drug use and had a relapse. [¶] My life spun out of control very quickly. I was in a state of oblivion. And I missed the court date all together. I was down at Valley Medical being treated for a prostate issue. I didn't realize I had missed court until the bail bondsman showed up at my home to arrest me. I realize that addiction is the core for every legal problem. And I realize I need help. I failed the court in my commitment. I failed my family. And also I failed myself. And I am truly sorry for the bad choices I have made up to this point."

The trial court explained as follows: "In 2009 you apparently had the opportunity of a lifetime when Judge Brock struck your priors and sentenced you to 16 months on three different cases which had a total of 11 counts. And within six months of that sentence you were committing these offenses. [¶] So while you--you have a drug problem, clearly there has to have been at some point during the past 36 years when you've been using drugs, that you could have taken some positive steps towards overcoming that drug use. And you haven't done that. [¶] And, consequently, I think that--[¶] And, in addition, I want to point out when you were out of custody on the VMC

3

cases you then committed the burglary of the automobile case. So you had your chances and you just haven't ever taken advantage of them. And I'm sorry that you haven't. But I think that the sentence that I have indicated to counsel of three [*sic*] years, eight months is appropriate. [¶] So under--at this time--the court will deny probation. [¶] And the defendant will be committed to the California Department of Corrections and Rehabilitation for 13 years and eight months."

<u>TERM EXCEEDING THE PLEA BARGAIN</u>

"Under section 1192.5, if a plea agreement is accepted by the prosecution and approved by the court, the defendant 'cannot be sentenced on the plea to a punishment more severe than that specified in the plea.' " (*People v. Masloski* (2001) 25 Cal.4th 1212, 1217.) The statute further provides that, if the trial court approves a plea bargain, it must inform the defendant before the plea that its approval is not binding, that the court may withdraw its approval in light of further consideration and that, if it does, " 'the defendant shall be permitted to withdraw his or her plea if he or she desires to do so. . . .' " (*Cruz*, *supra*, 44 Cal.3d at p. 1250, italics omitted.)

In *Cruz*, the defendant pleaded guilty pursuant to an agreement which provided that he would receive the lower term of imprisonment or probation with local custody, at his option. The trial court, however, did not admonish him in accordance with section 1192.5. The defendant failed to appear for sentencing. When he eventually appeared for sentencing, the trial court rejected his attempt to withdraw his guilty plea and sentenced him to the middle term of imprisonment. The Court of Appeal affirmed the judgment, but the Supreme Court reversed, holding that "[t]he imposition of an additional or enhanced sentence for a separately charged offense without the benefit of a trial on that charge, and in the absence of a knowing and intelligent waiver, is clearly offensive to the principles of due process." (*Cruz*, *supra*, 44 Cal.3d at p. 1253.) In reaching this conclusion, the court rejected the idea that failing to appear breached an implied term of the plea bargain that relieved the trial court of the restrictions of section 1192.5. Such

4

failure to appear is, rather, a separate offense that may be punished in a separate proceeding.

The court in *Cruz* also stated, however, that a defendant, under specified circumstances, could give up the protections of section 1192.5: "We do not mean to imply . . . that a defendant fully advised of his or her rights under section 1192.5 may not expressly waive those rights, such that if the defendant willfully fails to appear for sentencing the trial court may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term. Any such waiver, of course, would have to be obtained at the time of the trial court's initial acceptance of the plea, and it must be knowing and intelligent." (*Cruz*, *supra*, 44 Cal.3d at p. 1254, fn. 5.)

Such a waiver is commonly called a "*Cruz* waiver." (See *People v. Masloski*, *supra*, 25 Cal.4th at p. 1222; *People v. Vargas* (2007) 148 Cal.App.4th 644, 646.)

Defendant contends that the trial court erred by imposing a sentence greater than that agreed upon in the plea agreement. He initially describes the supposed error as the trial court's failure to (1) give him the admonitions required by section 1192.5, and (2) elicit from him a knowing and intelligent *Cruz* waiver. But we agree with the People that defendant's failure to obtain a certificate of probable cause is fatal to his attempt to challenge the sufficiency of the section 1192.5 admonitions and *Cruz* waiver.

"A defendant who has pleaded guilty or nolo contendere to a charge in the superior court, and who seeks to take an appeal from a judgment of conviction entered thereon" must fully comply with section 1237.5 and rule 8.304(b) of the California Rules of Court, which require that the defendant secure a certificate of probable cause in order to challenge the validity of the plea. (*People v. Mendez* (1999) 19 Cal.4th 1084, 1088.) In the absence of full compliance and a certificate of probable cause, the reviewing court may not reach the merits of any issue challenging the validity of the plea, but must order dismissal of the appeal. (*Id.* at p. 1099.) The California Supreme Court has expressly

5

disapproved the practice of applying the rule loosely in order to reach issues that would otherwise be precluded.  (*Id.* at pp. 1098-1099.)

In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, we must look to the substance of the appeal. The crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.  Therefore, we focus on whether the defendant's challenge to the sentence is in substance a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5.  (*People v. Buttram* (2003) 30 Cal.4th 773, 781-782.)

Here, defendant's plea bargain unquestionably included a *Cruz* waiver.  But whether defendant received adequate statutory warnings concerning his plea bargain and gave a knowing and intelligent *Cruz*-waiver are questions that go to the validity of the proceedings in which the plea was taken, not any issue that arose after entry of the plea. These questions are within the scope of section 1237.5 and require a certificate of probable cause before they may be raised on appeal.  (Cf. *People v. Panizzon* (1996) 13 Cal.4th 68, 76, fn. 6 [inadequate admonishment regarding waiver of appellate rights in plea agreement subject to § 1237.5].)  Since defendant did not obtain the requisite certificate of probable cause, we will not consider the questions.

Defendant, however, also describes the supposed error as a violation of *Cruz* because his failure to appear was not willful.  In essence, this aspect of defendant's challenge accepts the validity of the plea agreement and his *Cruz* waiver but contests the evidence justifying a sentence in excess of the plea bargain sentence.

A certificate of probable cause is not required where a defendant does not challenge the original validity of the plea but asserts that errors were committed in proceedings subsequent to the plea for the purpose of determining the penalty to be imposed.  (*People v. Kaanehe* (1977) 19 Cal.3d 1, 8.)

On the merits, however, defendant cannot prevail.

6

In analogous bail forfeiture cases, a defendant's failure to appear "is presumptively without sufficient excuse." (*People v. Beverly Bail Bonds* (1982) 134 Cal.App.3d 906, 911.) It was therefore defendant's burden to prove that his failure to appear was not willful. (*Id.* at pp. 911-913.)

"We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal. Under this test, ' "we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party*, *and disregards the contrary showing*.' [Citation.] All conflicts, therefore, must be resolved in favor of the respondent." ' [Citation.]

"But this test is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case (*Oldenburg v. Sears*, *Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742 [trier of fact is the exclusive judge of the credibility of the evidence and can reject evidence as unworthy of credence]; *Hicks v. Reis* (1943) 21 Cal.2d 654, 659-660 [trial court is entitled to reject in toto the testimony of a witness, even if that testimony is uncontradicted]).

"Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a

7

character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528.)

Here, the case is the ordinary one posing evidentiary conflicts. Defendant had the burden to prove that his failure to appear was not willful. The trial court concluded that plaintiff failed to carry this burden. That is the end of our inquiry. We decline defendant's invitation to address whether he "did not intend to miss the trial on the priors . . . because he was being treated for a medical condition." It is not our function to retry the case.

## MULTIPLE PUNISHMENT

The evidence as to count 9 (automobile burglary) and count 10 (automobile vandalism) was as follows: defendant walked up to the victim's vehicle, cut a hole in the convertible top, and reached inside; defendant then walked to the other side of the vehicle, cut another hole in the top, and reached inside; defendant then left the scene when a witness began walking in his direction; the witness left the area to look for the car's owner; when he returned with the owner, he saw defendant with his arm inside the vehicle.

In arriving at defendant's sentence, the trial court imposed a sentence of one year and four months for the automobile burglary and, consecutive to that term, one year and four months for vandalism of the vehicle.

Defendant contends that his consecutive sentence for vandalism should have been stayed under section 654 because the burglary and vandalism "were part of an indivisible transaction involving the intent to steal." We disagree with defendant's analysis.

Section 654 provides in part, "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

8

"[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) If all the offenses were incident to one objective, the defendant may not be punished for more than one, e.g., a defendant who attempts murder by setting fire to the victim's bedroom could not be punished for both arson and attempted murder, because his primary objective was to kill, and the arson was the means of accomplishing that objective and thus merely incidental to it. (*Ibid.*) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*Ibid.*) For example, the objectives to drive while intoxicated and to drive with a suspended license were separately punishable, though they occurred simultaneously. (*Id.* at p. 552.) The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal culpability. (*Id.* at p. 552, fn. 4.)

"A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.)

Here, the trial court specifically found that the burglary and vandalism were divisible: "Count nine--pardon me--is the burglary of the automobile. I am finding that that was a separate occasion from count 10. The [vandalism] of the automobile at the time of the [offense] [was] when the convertible top was initially cut into. That will be the [vandalism]. The defendant did try to find property in there. He was observed by a witness. [¶] He left the area when the witness came back with the owner of the car. They

9

found the defendant again with his hand inside the ripped convertible top, so I believe that is the separate--that makes the [burglary] a separate occasion. [¶] And I will impose 16 months consecutive on count nine. [¶] 16 months consecutive on count 10."

The evidence supports that defendant cut into the convertible top on one occasion, left the scene, returned on another occasion, and put his hand inside the vehicle. Defendant's point that there was a single objective to steal is simply a view of the evidence at odds with the evidence supporting the judgment.

INEFFECTIVE ASSISTANCE OF COUNSEL

When a defendant is sentenced on multiple felony counts under the Three Strikes law because he or she has previously been convicted of one or more serious or violent felony offenses, the trial court must impose consecutive sentences for all the current convictions that were committed on the same occasion and arose from the same set of operative facts. (§§ 667, subd. (c)(6), (7), 1170.12, subd. (a)(6), (7).) The trial court retains discretion to impose either concurrent or consecutive sentences for crimes committed on the same occasion or arising from the same set of operative facts. (§§ 667, subd. (c)(6), (7), 1170.12, subd. (a)(6), (7).)

Defendant contends that he received ineffective assistance of counsel because his trial counsel failed to object to the trial court's imposition of the consecutive sentence for count 10. According to defendant, the trial court's "stated grounds for imposing consecutive sentences . . . indicate that it believed" that a mandatory consecutive sentence was compelled but that its articulated reason for imposing a consecutive sentence (the burglary and vandalism were separate occasions) indicates that a consecutive sentence was not mandatory. Defendant concludes that, had trial counsel objected to the consecutive sentence on the ground that a consecutive sentence was discretionary, the trial court would have exercised its discretion to impose a concurrent sentence for count 10. There is no merit to defendant's contention.

10

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  That right "entitles the defendant not to some bare assistance but rather to *effective* assistance." (*Ibid.*)  But the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." (*Yarborough v. Gentry* (2003) 540 U.S. 1, 8.)

"To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1058; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)  'When a defendant on appeal makes a claim that his counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of representation provided by counsel.  "If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' [citation], the contention must be rejected." ' " (*People v. Samayoa* (1997) 15 Cal.4th 795, 845.)

Defendant bears a burden that is difficult to carry on direct appeal. (*People v. Lucas* (1995) 12 Cal.4th 415, 436.)  Our review is highly deferential; we must make every effort to avoid the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time. (*In re Jones* (1996) 13 Cal.4th 552, 561; *Strickland v. Washington*, *supra*, 466 U.S. at p. 689.)  In evaluating whether trial counsel's representation was deficient "we accord great deference to the tactical decisions of trial counsel in order to avoid 'second-guessing counsel's tactics and chilling

11

vigorous advocacy by tempting counsel "to defend himself [or herself] against a claim of ineffective assistance after trial rather than to defend his [or her] client against criminal charges at trial." ' " (*In re Fields* (1990) 51 Cal.3d 1063, 1069.) A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. (*Strickland v. Washington*, *supra*, at p. 689; *People v. Hart* (1999) 20 Cal.4th 546.) The burden is to establish the claim not as a matter of speculation but as a matter of demonstrable reality. (*People v. Garrison* (1966) 246 Cal.App.2d 343, 356.) As to failure to object in particular, "[a]n attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel." (*People v. Kelly* (1992) 1 Cal.4th 495, 540.) This is the case especially when trial counsel might reasonably have concluded that an objection would be futile. (*People v. Price* (1991) 1 Cal.4th 324, 387.)

There is ample reason why trial counsel may have concluded that objecting to imposition of the consecutive sentence was futile.

Most obviously, the trial court nowhere explicitly states that it was imposing a mandatory consecutive sentence. Contrary to defendant's premise, it is ambiguous whether the trial court imposed a mandatory or discretionary consecutive sentence. In the context of the trial court's articulated desire to impose a consecutive sentence, trial counsel could have interpreted the separate-occasion statements as reflective of the trial court's belief that defendant's vandalism offense was worthy of a consecutive sentence,[3] not that a consecutive sentence was mandatory. Given that the trial court did not address the second, independent requirement for a mandatory consecutive sentence (separate operative facts), we presume that the trial court imposed a discretionary consecutive

---

[3] Under California Rules of Court, rule 4.425, criteria affecting the discretion to sentence consecutively or concurrently include whether the crimes were committed at different times.

12

sentence. (*People v. Jacobo* (1991) 230 Cal.App.3d 1416, 1430 [an appellate court presumes that the trial court knew and applied the correct statutory and case law]; cf. *People v. Alvarez* (1996) 49 Cal.App.4th 679, 695 [an appellate court will not conclude that the trial court misunderstood the scope of its sentencing discretion "in the absence of some affirmative showing that it misunderstood its discretion"].) Objection was therefore futile.

In any event, had trial counsel believed that the trial court was erroneously imposing a mandatory consecutive sentence, counsel could nevertheless have reasonably refrained from objecting after concluding that, upon objection, the trial court would likely (1) overrule the objection and clarify that it was imposing a discretionary consecutive sentence, or (2) sustain the objection and impose a discretionary consecutive sentence by reiterating its already-expressed separate-occasion justification. (*Ante*, fn. 3.)

Defendant simply fails to affirmatively demonstrate ineffective assistance of counsel.

## PRESENTENCE CUSTODY CREDITS

Defendants who committed their crimes on or after October 1, 2011, are eligible for presentence conduct credits calculated on the basis of two days of conduct credit for every two days of actual custody. (§ 4019, subds. (b), (c) & (f).) Defendants who committed their crimes before October 1, 2011, are eligible for conduct credits at the previous rate of two days for every four days in custody. (*Id*. subd. (h).)

Notwithstanding the express legislative intent that the changes to section 4019, operative October 1, 2011 (hereafter the October 2011 amendment), are to have prospective application only--i.e., to crimes committed on or after the effective date of the statute--defendant contends that the October 2011 amendment to section 4019 violates the equal protection clauses of the federal and California Constitutions if it is not applied retroactively because it treats a defendant who committed a crime before October 1, 2011, differently than if he or she committed the same crime after the statute's

13

effective date. Defendant cites *In re Kapperman* (1974) 11 Cal.3d 542, 544-545 (*Kapperman*) and *People v. Sage* (1980) 26 Cal.3d 498, 507-508 in support of his equal protection argument. He seeks an additional 178 days of presentence credit.

To succeed on an equal protection claim, "a defendant must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 396 (*Kennedy*).)

In *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*), the California Supreme Court expressly determined that neither *Kapperman* nor *Sage* supports an equal protection argument, at least insofar as conduct credits are concerned. (*Id.* at pp. 329-330.) In rejecting an inmate's argument that January 2010 amendments to section 4019 should apply retroactively, the court explained "the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*Brown*, *supra*, at pp. 328-329.)

Addressing the inmate's equal protection claims, the court distinguished *Kapperman* on the grounds that it addressed custody credits, rather than conduct credits. (*Brown*, *supra*, 54 Cal.4th at p. 330.) Conduct credits must be earned by a defendant, whereas custody credits are constitutionally required and awarded automatically on the basis of time served. "Credit for time served is given without regard to behavior, and thus does not entail the paradoxical consequences of applying retroactively a statute intended to create incentives for good behavior. *Kapperman* does not hold or suggest that prisoners serving time before and after the effective date of a statute authorizing *conduct* credits are similarly situated." (*Ibid.*)

Concerning *Sage*, the court acknowledged that "one practical effect of [that decision] was to extend presentence conduct credits retroactively to detainees who did

not expect to receive them, and whose good behavior therefore could not have been motivated by the prospect of receiving them." (*Brown*, *supra*, 54 Cal.4th at p. 329.) However, it declined to read *Sage* as implicitly holding that prisoners serving time before and after a conduct credit statute takes effect are similarly situated for purposes of equal protection, because that proposition was not considered in the case. (*Ibid.*)

Defendant's reliance on *People v. Frye* (1966) 221 N.E.2d 262 (*Frye*), cited in a footnote in *Kapperman*, *supra*, 11 Cal.3d at page 547, footnote 6, is also erroneous. This Illinois case, similar to *Kapperman*, dealt with actual custody, and not the presentence conduct credits that we are concerned with here. Moreover, the date that was considered potentially arbitrary or fortuitous in the equal protection analysis was the date of conviction, a date out of a defendant's control, and not the date on which the crime was committed. (*Frye*, *supra*, at pp. 264-265.)

The *Brown* court finally resolved the equal protection issue by concluding that, "equal protection does not require former section 4019 to be applied retroactively." (*Brown*, *supra*, 54 Cal.4th at p. 330.)

Although the *Brown* decision concerned the January 2010 version of section 4019, we recently held that there is no reason why the reasoning and holding in *Brown* cannot be extended to the October 2011 amendment to section 4019. (*Kennedy*, *supra*, 209 Cal.App.4th at pp. 396-397; accord, *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1552.)

Moreover, in observing that the October 2011 amendment to section 4019 has prospective application only, the *Brown* court noted that the defendant had filed a supplemental brief in which he contended that he was entitled to retroactive presentence conduct credits under the 2011 amendment. It then observed that the amendment did not assist the defendant because the "changes to presentence credits expressly 'apply *prospectively* . . . to prisoners who are confined to a county jail [or other local facility] *for a crime committed on or after October 1, 2011*.' [Citation.] Defendant committed his

15

offense in 2006." (*Brown*, *supra*, 54 Cal.4th at p. 323, fn. 11.)  Similarly, here, defendant committed his offenses in 2008 and 2010.

The right to equal protection does not prevent the Legislature from limiting the increased level of presentence conduct credits to detainees who committed their crimes on or after October 1, 2011.  We therefore reject defendant's equal protection challenge to the October 2011 amendment of section 4019.

Alternatively, defendant seeks an additional 75 days of presentence custody credit (from October 1, 2011, until his sentencing on January 13, 2012) on the theory that the October 2011 amendment applies to prisoners confined after October 1, 2011, for crimes committed before October 1, 2011.  But he cites no authority for the proposition.

DISPOSITION

The judgment is affirmed.

_____<br>Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

16